# MARYLAND REPORTS.

## APRIL TERM, A. D., 1873.

THE BARTON COAL COMPANY vs. WALTER S. COX
and THOMAS C. COX, Executors of JOHN A. SMITH,
and others.

*Plea of ne unques Executors—Measure of Damages in an action
of Trespass for Mining and carrying away the Plaintiffs'
coal—Objection to Evidence; when too late—Action properly
maintainable by Executors—Sufficiency of the Narr.*

If in an action of trespass for breaking and entering the plaintiffs' coal lands,
it be made to appear that the defendant mined out coal from said lands, and
made excavations thereunder, and removed the coal so excavated, and
thereby injured the coal left remaining as pillars, or by bad mining or
otherwise, rendered it difficult or impossible for the plaintiffs to get out or
remove such pillars of remaining coal, or rendered it of less value to them,
then they are entitled to recover for such coal as cannot be removed, what
it was worth per ton, in its native bed, and such damages for so much of
said coal as can be removed, but with increased expense, as the evidence
may show such coal to be diminished in value.

And if the defendant, in mining and excavating under the said lands, thereby
rendered it more difficult and expensive for the plaintiffs to obtain access to
the coal thereunder, and depreciated the value of said remaining coal, the
plaintiffs are entitled to such damages as they may have sustained from the
depreciation of the land and the increased difficulty and expense of obtain-
ing access to the coal remaining therein.

·The Barton Coal Co. *vs.* W. S. & T. C. Cox, Exc'rs, *et al.*

In an action of trespass for breaking and entering the plaintiffs' close, and mining and carrying away their coal, the proper estimate of damages is the value of the coal per ton, after it is severed from its native bed, and before it is put upon the mine-cars, without deducting the expense of severing it; and if the defendant knew, at the time the trespass was committed, that the land was not its own, the plaintiffs are entitled to exemplary damages.

A general instruction, after the testimony is closed, that the testimony of such of the plaintiffs' witnesses as were not present at the making of the survey returned in the cause, is not competent to prove any objects connected with said survey, or intended for illustration thereof, and must not be considered by the jury as evidence for such purpose, is properly rejected, in the absence of a general reservation of exceptions to evidence, and of anything to indicate the particular witness or witnesses to which the instruction was intended to apply.

Three persons holding undivided portions in fee, of certain coal lands, on the 12th of August, 1867, brought an action of trespass to recover damages for the entering upon said lands and mining and carrying away coal. The *narr.* charged sundry trespasses between the 21st of August, 1864, and the day of instituting the suit. The injuries complained of, were digging and sinking divers mines, drifts, pits, shafts, &c., of great length, breadth and depth, and, from out of said mines, &c., raising earth, soil, stones, coal, iron ore and other minerals, &c., and taking and carrying them away. Evidence was offered tending to prove the injuries complained of. One of the plaintiffs died in July, 1868, and his executors were made parties, and with the co-plaintiffs of their testator, prosecuted the suit. The deceased devised all his estate, real, personal and mixed, to his wife (Mrs. Sally Smith) during her natural life, with power to convey, &c. HELD:

1st. That the operations complained of in the *narr.* could not be continuously carried on for a series of years without impairing the fee simple value of the land in the life-time of the testator, and his co-plaintiffs and himself, and his executors after him, had the right to recover the full value of the property injured, even if it absorbed the fee simple. The devisee took only what remained after the testator's death; she could institute no action for the consequences of the trespass committed in the testator's life-time—there could be but one satisfaction for the injuries done him.

2d. That the *narr.* having charged the most serious injury which could have been inflicted on the fee or inheritance, and which necessarily involved all the natural results of waste, damages were recoverable therefor, without further specification.

The Barton Coal Co. *vs.* W. S. & T. C. Cox, Exc'rs, *et al.*

APPEAL from the Circuit Court for Washington County.

The nature of the case, together with the first, third and fourth exceptions of the defendant, are stated in the opinion of the Court; the other exceptions of the defendant are as follows:

*Second Exception:* After the plaintiffs had concluded their evidence and rested their case, the defendant called Dr. Samuel P. Smith, and by him proved that he acted as the agent of John A. Smith, deceased, in his life-time, and for his widow since his death, in respect to lands mentioned in the declaration in this case, and that from time to time, as in his judgment the interests of the parties required, acted for them in reference to the disposition, care and management of said lands. That he made negotiations in respect to the sale of them, and being the only member of the family resident in Allegany, he was requested to attend to their interests in said county, in respect to these lands; but he was not, at any time, acting for the executors in this case, or for Hoye or Coombs; but that he had no written authority to make sales, and no authority to make binding contracts in respect to the sales thereof, but was authorized by Sally Smith, the devisee of John A. Smith, to make negotiations and offers of sale, subject to approval by her. The defendant, then, as evidence as to the value of the lands in controversy, offered to read to the jury the following letter:

*Septr. 5th,* 68.

T. S. CUNNINGHAM, ESQ.,

*Dear Sir:*—Mr. Chisholm, the surveyor that lately ran out our lands, makes the amount of coal (large vein) lying between Maiden's Delight and Mount Clare, to be $37\frac{3}{4}$ acres—pure, solid coal, (large vein.) We are desirous to sell to your company, and will take $300 per acre, and will be willing to sell you some land adjoining, (not

the large vein,) at a fair price, and also desirous to settle about the land occupied by your railroad leading from the Barton Mine. I will be glad to hear from you very soon.

With respect, yours,

SAML. P. SMITH,

*Agent for Mrs. Sally Smith.*

The plaintiffs objected, and the Court (MOTTER, J.,) sustained the objection ; the defendant thereupon excepted.

*Fifth Exception :* The plaintiffs offered the following prayers :

1. If the jury shall find from the evidence in the cause that the defendant broke and entered the lands of Edward Hoye, John S. Coombs and John A. Smith, at the places located on the plats, prior to the institution of this suit, and that John A. Smith died since the institution of this suit, and made his last will and testament, as offered in evidence, and appointed the plaintiffs, Walter S. Cox and Thomas C. Cox, his executors, and that letters testamentary were granted to said executors by the Orphans' Court of Washington county, in the District of Columbia, and that said John A. Smith resided in said District of Columbia at the time of his death, and that the defendant mined out coal from said lands and made excavations thereunder, and removed the coal so excavated, and thereby injured the coal left remaining as pillars, or by bad mining or otherwise, rendered it difficult or impossible for the plaintiffs to get out or remove such pillars of remaining coal, or rendered it of less value to them, then the plaintiffs are entitled to recover such sum per ton for such coal as cannot be removed, as they shall find from the evidence it was worth in its native bed, and such damages for so much of said coal as can be removed, but with increased expense, as they may find such coal to be diminished in value.

2. That if the jury believe the facts stated in the first prayer, down to and including the words, "District of Columbia, at the time of his death," and that the defendant mined and excavated under the said lands, and thereby rendered it more difficult and expensive for the plaintiffs to obtain access to the coal under said lands, and depreciated the value of said remaining coal, then the jury may allow the plaintiffs such damages as they may find the plaintiffs have sustained from the depreciation of said land and increased difficulty and expense of obtaining access to the coal remaining therein.

3. That if the jury believe the facts stated in the first prayer, down to and including the words, "District of Columbia, at the time of his death," and that the defendant mined out coal from under the said lands at the places as located on the plats in the cause, then the plaintiffs are entitled to recover such sum per ton as the jury may find the said coal so mined was worth when first severed from its native bed, and before it was put upon the mine-cars, without deducting the expense of severing said coal from its native bed.

4. That if the jury believe the facts stated in the first prayer, down to and including the words, "District of Columbia, at the time of his death," and that the defendant, at the time of committing said trespasses, knew that said lands were not its own, then the jury are not limited to the actual amount of damages committed, (if they shall find any have been committed,) but may find such further damages as the facts and circumstances accompanying such trespasses may warrant.

The defendant offered the following prayers:

1. That if the jury find from the evidence in the cause that any of the witnesses of the plaintiffs were not present on the ground at the making of the survey returned in this cause, that then the testimony of such witness is not competent to prove any objects, whether

headings, rooms, falls of material or obstructions, or other object connected with said survey; or intended for illustration thereof, and must not be considered in evidence for that purpose in this cause.

2. That if the jury shall find from the testimony in the cause, that the defendant dug out and carried away the coal of the plaintiffs, without knowing that it was trespassing upon the property of the plaintiffs, and believing that it was its own coal, then the measure of damages to be recovered for such digging and carrying away of coal, is the value of the coal in the mine.

3. That the plaintiffs are not entitled to recover in this action for any trespasses committed since the 12th day of August, 1867, (the date of the institution of the suit.)

4. That if the jury find from the evidence in the cause that the will of John A. Smith, offered in evidence by the plaintiffs, was executed by said John A. Smith, then the said will vests the title to the land in controversy in Sally Smith, the devisee under said will, and no injury done to said lands as real estate, and to the fee simple interest in said land, can be recovered by the executors of the said John A. Smith, under the pleadings and evidence in this cause.

5. That if the jury find the facts stated in the defendant's fourth prayer, then the executors of John A. Smith cannot recover on the pleadings and evidence in this cause, for any injury done to the lands in controversy, which would only affect their value as coal lands, after the death of said testator.

6. That the suit in this cause, and the pleadings therein, being joint on the part of the plaintiffs, the said Edward Hoye and John S. Coombs are limited to the same measure of damages in this action as the other plaintiffs, and cannot recover for any other or further damages than are allowed to the executors of John A. Smith.

7. That if the jury shall find from the evidence in the cause that the tram-road and inclined plane, located on the plats, were made and in use before the year 1864, by parties who used and worked the mines on the tract called "Maiden's Delight," previous to that time, then the plaintiffs cannot recover damages, on the pleadings and evidence in the cause, for any excavations or other thing done in or about the working of said tram-road and inclined plane.

8. That the said executors of John A. Smith are not entitled to recover on the pleadings and evidence in this cause, for any damage to the coal now remaining in the lands in controversy, and which would affect the right and interest of said Sally Smith, as devisee under the will of the said John A. Smith.

9. That if the jury find from the evidence in the cause that the defendant took and carried away the coal of the plaintiffs, as charged in the declaration, then they may allow the value of said coal to the plaintiffs on the premises at the time it was taken, as part of the real estate, but they cannot allow its value as damages to the real estate, and also its value after it was severed from the realty, as part of the personal property of said plaintiffs. And in estimating the value of said coal, either as real or personal property, they should consider its distance from railroads and other means of transportation to market, and the cost and difficulty of constructing tram-roads, inclined planes, bridges, sidings, shafts and other necessary means of carrying it to market.

10. That the jury cannot add the cost of mining the coal in controversy to its value, before it was severed from the mine, as a mode of ascertaining its value to the plaintiffs after such severance.

The Court granted the prayers of the plaintiffs, as also the third and sixth prayers of the defendant; the other prayers of the defendant were rejected. To the granting

of the plaintiffs' prayers and the rejection of its prayers, the defendant excepted.

The jury rendered a verdict for the plaintiffs and assessed the damages at $ 22.954.24. This amount being in excess of the damages claimed, a *remittitur* was entered by the plaintiffs for the excess, $2,954.24, and judgment was rendered for $20,000.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ALVEY and ROBINSON, J.

*J. H. Gordon* and *I. Nevett Steele,* for the appellant.

The third and fourth exceptions, involve the same principle. The defendant, in mitigation of damages, offered to prove the market value of the coal, and the expenses and charges necessary to carry it to market, and in this way prove that its value in the mines or at the mouth of the mines, owing to its remoteness from the means of transportation, and the cost of making necessary connections would be nothing or next to nothing at all.

This evidence the Court rejected improperly. The correctness of the principle contended for by the defendant in offering the testimony in those bills of exceptions, is recognized by the Court below in granting the first and second prayers of the plaintiffs. The Court in those prayers instructed the jury, that if they found *that the defendant by bad mining or otherwise, rendered it more difficult and expensive for the plaintiffs to obtain access to the coal* and mine it out, then they might allow damages for the injury sustained thereby; thus acknowledging that the means of access, and difficulty of getting out the coal, were matters to be considered in arriving at the value of the coal and its depreciation in the mines.

The plaintiffs' first prayer was improperly granted, because, the jury was thereby instructed that they must estimate the damages done to the coal left in the mine,

*by the ton.* This was erroneous, first, because there was no evidence to show the number of tons of coal that remained in the mine, or that was injured by bad mining, and it laid down for the jury an impracticable mode of arriving at their verdict, and was calculated to mislead them.

Secondly, because the only testimony showing the quantity of coal in the land in controversy, as a whole, was that which showed its contents by the acre; there was no evidence to show the number of tons of coal in the whole property, or the number of tons that remained, and the jury had a right to make the estimate of damages in their own way, and the instruction was an improper interference with their right in that respect.

The plaintiffs' third prayer, granted by the Court below, required the jury, without reference to any of the surrounding circumstances of the trespass, to give as damages, what the coal was worth after it was severed from its native bed, without deducting the expense of severing it. The defendant's prayers on the contrary asserted, that the defendant was liable only for the value of the coal in the mine, that is, in its bed, if the defendant believed the coal to be its own and did not know it was trespassing; and that the jury could not add the cost of mining the coal to its value before it was severed from the mine, as a mode of ascertaining its value to the plaintiffs after such severance.

In the action of trespass *q. c. f.* the true rule of damages is, first, that the plaintiff shall be fully compensated for the injury actually sustained by him; and, secondly, if there be circumstances of malice, oppression, intentional wrong, &c., in the case, that he shall recover such further damages as the jury, in consideration of these circumstances, may deem proper. The second branch of this rule was applied to this case by the Court below, in granting the plaintiffs' fourth prayer, and the appellant

makes no point as to the correctness of that ruling; but the Court below erroneously departed from the first branch of the rule in granting the third prayer of the plaintiffs, under which the jury were bound to give them not only the value of the coal in its bed, but its very largely increased value after it was mined or severed from the soil. Thus the plaintiffs recovered, in addition to the value of the coal as they owned and held it, the cost, and more than the cost, which the defendant had paid for mining it. Instead of being compensated and indemnified for the injury sustained, they were enabled to realize an enormous profit out of a trespass, which, for anything that the third prayer required the jury to find, might have been committed by the defendant inadvertently and in the honest belief that it was mining its own coal.

In actions of trespass in Maryland, it is believed that damages beyond the actual injury which the trespass has caused, are only given when the jury finds intentional wrong, malice, oppression, &c., and when the matter is left to their discretion.

The question of the measure of damages is not a technical question, and when presented independently of the right to exemplary damages, as in the plaintiffs' third prayer, is to be answered by ascertaining what is a full compensation for the injury sustained. Here the injury suffered by the plaintiffs, was in fact and in law, an injury to their coal lands. If the wrong done to them consisted in the removal of all the coal from under an ascertained quantity of their land, then the utmost proper and just measure of damages, would be the value of the coal land so worked out; and if a portion of the coal only was taken from the land, then the proper measure would be the value of the coal in its bed, that being obviously the extent to which the value of the land had been impaired by the removal of the coal. *Wood vs. Morewood,* 3 *Q. B.*, 440,

(43 *E. C. Law*, 810); *Hilton vs. Woods*, 4 *Equity*, 432; (*Law Rep.*); *Forsyth vs. Wells*, 41 *Penn.*, 291; *Coleman's Appeal*, 62 *Penn.*, 252, 278; *United States vs. Magoon*, 3 *McLean*, 171; *Stockbridge I. Co. vs. Cone I. Works*, 102 *Mass.*, 80; *Herdick vs. Young*, 55 *Penn.*, 176; *Ridgley vs. Bond*, 17 *Md.*. 22, 23; *Salmon vs. Horwitz*, 28 *E. L. & E. Rep.*, 175; *Jegon vs. Vivian*, 6 *Chan. Appeals*, 760–1–2, (*Law Reports.*)

The fourth, fifth and eighth prayers of the defendant present the same legal proposition, with very little variation and should have been granted. First, because the declaration claims only damages for mining and carrying away coal. It says nothing about injuries done to the mines by improper or unskilful mining, and it gives no notice to the defendant that any such damages would be claimed as is claimed and allowed under the ruling of the Court in the third and fourth prayers of the plaintiffs. Such damages could only be recovered on a special allegation setting them out in the declaration. *Ellicott vs. Lamborne*, 2 *Md.*, 132; *McTavish vs. Carroll*, 13 *Md.*, 437; 2 *Rob. Prac.*, 549; 2 *Greenleaf on Ev.*, Sec. 254; 1 *Chit. Pl.*, 396 *to* 399.

Second.—Because the will of John A. Smith devised to his wife, Sally Smith, all his estate, *real, personal and mixed*, and the lands in controversy thereby passed to Sally Smith, and such damages as did not result necessarily, and during the life-time of John A. Smith, *but would only affect their value as coal lands after his death,* could not be recovered under the declaration which did not set them out specially.

Third.—The plaintiffs' claim for damages is partly based upon the charge that the mining done by the defendant was improperly done, and that the mine had not been properly supported, and in consequence thereof the roof had fallen in at divers places, and filled up the rooms and buildings, and prevented the excavation of

coal lying behind the falls thus made, and thereby injured the lands as coal lands.    The executors could not recover for any damage of this kind which resulted after the death of John A. Smith, because that was recoverable by the devisee in her own right.    1 *Chit. Pl.*, 66; *Tucker vs. Newman*, 11 *Adol. & Ellis*, 40; *Sedgwick on Damages*, 139; *Jesser vs. Gifford*, 4 *Burrows*, 2141.

Any damage which did not accrue or affect the lands until after the death of the testator, would be too remote to be recoverable under the declaration, without some special statement to show that they were claimed, which would give notice to the defendant.

Besides, if they affected the interest of Sally Smith as devisee, they could not be recovered by the executors, who only represent the personalty.

*William Walsh* and *William T. Hamilton*, for the appellees.

The third prayer of the appellees is the only substantial point of controversy in the case.    And the instruction it gives the jury on the rule of damages, against a trespasser, is doubtless correct.    It is only announcing an ancient and well settled rule of law, that the trespasser, who takes another's property and converts it to his own use, must pay the full value of it at the time and place of conversion, and cannot make the owner of it pay him wages, hire or expense for his wrongful conduct.    The owner did not employ him to cut the timber or dig the coal, and owes him nothing for doing it.    And the owner has a right to take his timber or coal wherever he finds it, no matter how much labor the trespasser has put on it. And if the owner cannot find it, or does not choose to replevy it, he recovers the full value of it at the time of the conversion *as enhanced* by the *unauthorized labor and expense of the trespasser*.    The law does not encourage the trespasser by giving him a *lien* on his neighbor's

property for his efforts and expenses in trying stealthily to prepare it for market and carry it away and put the money in his own pocket. The law is based on the great principles of honesty and justice, without which society could not exist. 2 *Greenleaf Ev.*, Sec. 276; *Greenfield Bank vs. Leavitt*, 17 *Pick.*, 3; *Baker vs. Wheeler*, 8 *Wend.*, 505; *Bainbridge on Mines and Minerals*, (*Edition* 1871,) 444 *top; Martin vs. Porter*, 5 *M. & Wels.*, 351; *Morgan vs. Powell*, 3 *Adol. & Ellis, N. S.* 281, (43 *Eng. Com. L.*, 736); *Wood vs. Morewood*, 3 *Adol. & Ellis*, 440, (43 *Eng. Com. L.*, 810.)

There is no exception to the rule. The case last cited, and the cases in equity cited by the appellant, are cases of *bona fide*, but defective, title in the party mining the coal, or cases of co-owners of undivided interests, where each had a right to work the property as the only means of getting his own share out of it. In the latter class of cases the party only accounts with the real owner. But there is no accounting between a trespasser by fraud or negligence and the owner of the property. Was it not fraud or negligence, in the language of the Judge in *Wood vs. Morewood*, for the appellant, bound to know its own limits and having no shadow of title or claim to the appellees' land, to continue for years to mine out their coal? McKaig proved the appellant knew the appellees' boundaries, from its organization in 1864 or 1865.

The appellant did know its own limits, and also the appellees'. Was it negligent in not keeping within them? But the proof goes farther and establishes that it knowingly and wilfully continued to take the appellees' coal. This is a case of more aggravated and persistent trespass on mines than any of the cases above cited, where the law of the prayer was applied. Trespassers on mines have great facilities in their secret and inaccessible underground operations to exceed their boundaries and note the minerals of their neighbors; and hon-

esty and justice require that the wholesome rule established against fraudulent or negligent trespassers in the above cases should be strictly applied for the protection of mine owners in Maryland.

The fourth prayer of the appellees was drawn upon the authority of the case of *Ridgely vs. Bond and Wife*, 17 *Md.*, 14. The appellees gave evidence at the trial below, tending to show that when the Barton Coal Company committed the trespasses mentioned in the proceedings, it knew that the land upon which it had entered was not its land, but belonged to the appellees.

The first prayer of the appellant was properly refused. There is no doubt that a witness who was not on a survey cannot speak as to any object located on the plats. This was decided in *Morrison and Kildow vs. Hammond's Lessee*, 27 *Md.*, 604. But in that case the objection to the competency of the witness was taken when he took the stand to testify. And although the same question was raised again upon the prayers (see page 619 in the report of the case in 27th Md.,) it had been distinctly raised by the objection at the proper time, and the attention of the Court was directed to it at that time. In the case at bar, no objection was made to the competency of any witness when offered, and in point of fact, none could have been made, because no witness was offered who was objectionable under the ruling in *Morrison vs. Hammond.*

The record shows that the locations were proved by witnesses who were actually on the survey, and pointed out to the surveyor the objects to which they testified. And the *record does not show that any witness in the cause was examined as to objects or locations who was not upon the survey, and who did not point out the objects to which he testified.* The prayer, therefore, was not based upon any state of facts shown by the record, and could only raise an abstract point, not applicable to the actual case, and mislead or confuse the jury. But oven if the testimony

of witnesses as to location not on the survey was in the case, the appellant should have objected when it was offered, and cannot raise the question by prayer, where the testimony was received and admitted absolutely and not subject to exception. *Baugher's Exc'rs vs. Duphorn, et al.,* 9 *Gill,* 314, 325 ; *Andre vs. Bodman,* 13 *Md.,* 241, 251.

The appellant's second prayer is erroneous, even on the hypothesis it rests on. It omits altogether the question of negligence. The appellant was bound to know whether it was trespassing or not. It had no claim to the appellees' land. It was bound to know its own land. The case of *Wood vs. Morewood,* 3 *Q. B.,* 440, (the most favorable case for the appellant,) says that whether the coal was taken wilfully or negligently the rule of damages is the value of the coal when converted into a chattel. The respective locations of the lands of both parties are the same, showing the appellant had not even the baldest pretence for digging the coal for years in the appellees' land. The question of negligence should *be submitted to the jury.* Besides, the prayer is ambiguous. and could furnish nothing but darkness and confusion to the jury. It says, on its hypothesis, the measure of damages is "the value of the coal in the mine." But at what time and in what condition? Before the coal was severed, or when in its native state? There is a wide difference. The prayer should have defined the time and condition when and in which the coal should be valued by the jury.

The appellant's fourth, fifth and eighth prayers seek to limit the recovery by the fact that the executors of John A. Smith are parties to the suit to recover damages for trespasses to his interest, in the land committed and sued for before he died. It is difficult to understand why the executors should not recover for all the damages for which the testator could recover. The suit did not abate by

Smith's death, but went on as if he were living. Did his death benefit the trespasser and change the rule of law defining the extent of his liability for his wrongs? How can Smith's death excuse the trespasser or curtail the recovery in the suit? It is certain that the heir or devisee could not recover for trespasses committed on the land before the death of the ancestor or testator,—that is, *before he was heir or devisee.* No doubt the injuries done to these coal lands by taking away the coal in the life-time of the testator affected the value of them after his death and will affect their value forever. But still these injuries were done in his life-time. No trespass could be committed on the heir or devisee while Smith was living. There was no heir or devisee of his to trespass on. Unless his executors can recover for all the damages done to Smith's interest while he lived no one else can, and his death releases the trespasser to some vague extent, which these prayers are unable to define. The law gives the action to the executors, and enables them to recover all that Smith could have recovered if living at the trial. *Art.* 2, *sec.* 3, *and Art.* 93, *sec.* 105, *of the Code of Pub. Genl. Laws; Kennerly's Exec'x vs. Wilson,* 1 *Md.,* 102.

The right of action on a broken covenant running with the land, though going to its entire value, would rest in the executor and not pass to the heir or devisee, and the Code, instead of letting actions of trespass die, places them on the same footing and enables the executors to recover the full extent of the injury to the lands. *Bedoe's Exec'r vs. Wadsworth,* 21 *Wend.,* 121; *Thayer vs. Clemence,* 22 *Pick.,* 490; *Clark vs. Swift,* 3 *Metcalf,* 390.

The ninth prayer of the appellant is directly contrary to the appellees' third prayer; it would cut down the recovery to the value of the coal *"as part of the real estate;"* that is when in its *native place,* and not after it was turned into a chattel by severance from the real estate. This is clearly not the law.

The tenth prayer is also contrary to the rule of damages laid down in the appellees' third prayer. If the appellees were entitled to the value of the coal after severance and when it first became a chattel, then the cost of mining it or turning it into a chattel was a proper element for the jury to consider in estimating its value as a chattel. But this prayer, as well as the ninth, would absolutely prohibit the jury from valuing the coal as a chattel, by forbidding them to consider the cost of turning it from real estate into a chattel.

These prayers also *utterly ignore the question whether the appellant was a wilful or negligent trespasser or not.*

They assume the law to be, that though the appellant knew the land was not its own and knew the appellees owned the coal, yet they can only recover the value of the coal in its native bed.

Such is not the law applicable to a wanton trespasser.

Bowie, J., delivered the opinion of the Court.

It appears from the record, that the suit in which this appeal is taken, was instituted originally, by John A. Smith, John S. Coombs, and Edward Hoye, against The Barton Coal Company, the appellant.

The declaration was filed in the names of the co-plaintiffs, containing three counts, which, as far as the distinctive forms of action can be recognized in our present system of pleading, may be designated as trespass *quare clausum fregit, et, de bonis asportatis* combined.

The first count, is a general one, charging that the defendant, broke and entered the *locus in quo* and mined, dug, excavated, and carried away large quantities of coal.

The second and third, set out the trespasses with greater minuteness, and charge that the defendants then and there raised, large quantities of coal, iron ore, and other minerals, and then and there, took, carried away and converted it to their own use. The defendants

2 v. 39.

"pleaded" they did not commit the wrongs, etc., and "freehold in the defendants," on which pleas issues were joined, and a warrant of resurvey issued, executed and returned, showing no conflict of title or location, but that both parties located the several tracts, on which the trespass was complained of, in the same manner.

The cause having been removed, on the suggestion of the appellant, from the Circuit Court for Allegany County, to the Circuit Court for Washington County, on the 22nd July, 1872, the record was filed in the latter Court, the death of John A. Smith suggested, and motion made for leave to make new parties, by inserting the names of his executors, Walter S. Cox and Thos. C. Cox; which leave was granted on the 31st July, 1872, and new parties made.

The plaintiffs then filed their replication to the second plea of the defendant, viz: "that the close in the declaration mentioned, was not the close of the defendant."

On the 19th November, 1872, the defendants filed their plea of *ne unques executor*, which on motion of the plaintiffs was stricken out on the same day.

This action of the Court below, is made the first subject of objection, on the ground that the appellant had a right to know the recovery was by the proper parties, otherwise a second recovery might be had for the same cause of action, and the issue could only be made by plea. There is no doubt that the identity and verity of the representative character, in which a suit is brought, or maintained, by a person claiming to be executor, or administrator, must be established, in order to enable him to recover, as well as when a party sues individually. Whence, whenever a defendant has reason to doubt whether the plaintiff is the person he assumes to be, he may plead in abatement, *i. e.*, show cause why he ought not to be impleaded, in the manner and form he now is; these pleas being dilatory, must be pleaded within a certain time

prescribed by the Court and generally before a general imparlance or continuance—otherwise an infinite delay might ensue.

The 3rd sec. of Art. 2, of Pub. Genl. Laws, title, "Abatement," provides that if the plaintiff in any action shall die before judgment, his heir, executor or other proper person to prosecute such action, may appear and prosecute the same, and such other proceedings shall be had to bring the cause fairly to trial as the Court may deem proper.

It does not appear from the record, or agreement filed in the cause, whether any term intervened, between the appearance of the executors, which was on the 31st of July, 1872, when they filed their replication, as of April Court, 1872, and November Term, 1872, when the appellants filed their plea of *"ne unques executor;"* but this Court must presume the Court below for some sufficient cause directed the plea to be stricken out, so great a lapse of time having occurred between the appearance of the executors, and the plea, and a continuance had. The proper time for such a plea was when the executors asked leave to appear, and the plea should have been entered at that term.

At the trial five bills of exceptions were taken by the appellants, and three by the appellees, but no appeal being taken by the latter, these are not under consideration.

The first exception of the appellants, was taken to the admission of certain certificates of letters testamentary to the executors, and in connection therewith, copies of the last will and testament of their testator and of probates of attesting witnesses thereto annexed, under the hand of the Register of Wills and seal of the Orphans' Court of Washington County, District of Columbia, and subscribed by the Judge thereof, which were offered by the plaintiffs below to prove the representative character of the executors of Smith.

The Barton Coal Co. *vs.* W. S. & T. C. Cox, Exc'rs, *et al.*

However informal and irregular these certificates may have been, and whatever error was committed by the Court below, in admitting them, that error was corrected and rendered harmless by the introduction at a subsequent stage of the trial of an exemplification of the letters testamentary, authenticated according to the testamentary system of this State. *Vide Art.* 93, *sec.* 76, *of the Code of Pub. Genl. Laws.*

The appellant's second bill of exceptions is taken to the rejection and exclusion as evidence, of a letter offered by the appellant, purporting to be signed by Doctor Samuel P. Smith, agent for Mrs. Sally Smith, dated the 5th of September, 1868, addressed to T. S. Cunningham, Esq.

We cannot perceive any ground for questioning the propriety of the Court's decision in this respect. The writer of the letter was himself before the Court as a witness. He had testified that although he had acted as agent for John A. Smith in his life-time, and for his widow and legatee Mrs. Sally Smith since his death, he had never been agent for Hoye and Coombs, or the executors of Smith; under such circumstances, to have admitted the letter of one who was a stranger in interest to the parties to the cause, would have violated the elementary rules of evidence.

The third and fourth exceptions of the appellant are taken to the exclusion of certain evidence, offered by the appellant in mitigation of damages. The particular statement and account referred to in the third, having been lost, that item of evidence is necessarily disposed of, but the same principle is said to be involved in the fourth exception, in which the appellant offered to prove *the costs, expenses, and charges of removing the coals mined from the rooms in which the coal lay when first taken from the bed of the Barton Coal Mines,* and the costs and expenses of removing it to the opening of the mines, and the ruling market value thereof, after being transported to market,

and cost of such transportation. If this exception was interpreted literally, it would be sufficient to say, that evidence of the value of coal in the Barton Coal Mines, and of the costs of removing thence to its opening and to market, was not evidence of the value of coal in the appellees' mines, and the costs of transportation to the opening and thence to market, and however close these mines may be in fact, that such evidence is not admissible, by comparison, when direct testimony might be procured, but the question really involved and intended to be presented, is that submitted by the third prayer of the *appellees*, and which constitutes a part of the appellants' fifth exception, and which declares, if the jury find the facts mentioned in their first prayer, then they, the appellees, are entitled to recover such sum per ton, as the jury may find the said coal so mined was worth, when first severed from its native bed, and before it was put upon the mine-cars, without deducting the expense of severing said coal from its native bed. If the appellees were entitled to recover the price of the coal as alleged in the third prayer, the evidence of the cost of severance and transportation, designed to be offered by the appellants in their fourth bill of exceptions, was impertinent, immaterial, and inadmissible.

There are two standards, or measures of damages to property, the one, the severe; the other, the lenient, which according to some of the authorities, depend upon the intention or *mala fides* of the defendant, and according to others, upon the form of the action.

This distinction is admitted, in the very recent case, of "*The United Merthyn Colliery Company, ex parte The Powell Daffryn Steam Coal Company's Claims,*" cited by the appellant, from "*The Weekly Reporter and Solicitors' Journal,*" *December 7th,* 1872. This was a motion made in behalf of the former company, for obtaining from the Court, the *construction* of an order made previously, by

which the former company were ordered to pay the value of certain coal (obtained by them under a trespass) at the pit's mouth, deducting the cost of severance and the cost of carrying to the pit's mouth. The solicitors in support of the motion, arguing that just allowances of *winning* coal are deducted in cases of trespass *when there has been no fraud,* say, in such cases, there is a severe rule and a lenient or mitigated rule.

The Court, BACON, V., C. held "*the defendants here must be taken as purchasers,* the plaintiffs, although they have suffered a wrong, must not have more of the benefit of that wrong, than was actually the case. All just allowances must mean actual disbursements, but without profit. The plaintiffs must be in the same position as if they had severed the coal and brought it to the bank themselves, apart from any profit."

The circumstances of the case are not disclosed, further than may be inferred from the observations of the counsel, and the language used by the Court. The appellees' third prayer, does not, it is said, advert to the distinction referred to in the above case, the existence of fraud, or knowledge on the part of the defendant, as in the case of *Ridgely vs. Bond and Wife,* 17 *Md.,* 14..

If this were an action of trover, the plaintiff according to the authorities, might recover the enhanced value, and is not confined to the value of the material either at the place of taking or of manufacture. 2 *Greenleaf Evid., Sec.* 276; *Greenfield Bank vs. Leavitt,* 17 *Pick.,* 3; *Baker vs. Wheeler,* 8 *Wend.,* 505; *Rice vs. Hollinsbeck,* 19 *Barr,* 664.

Adverting to these or similar cases, Mayne, in his work on Damages, p. 289, says, "A curious question has been raised in America, as to the value at which an article is to be estimated, which has been changed into some new form by its wrongful taker. In New York, it has been several times ruled, that the whole value of the article

in its new form may be recovered; as for instance, where timber had been converted into boards, wood into coal, black salts into pearl ashes." See cases cited, *Sedgwick on Dam.*, 565, (*4th Ed* )

\* \* \* \* " But this merely decides who shall have the property, not what amount of damage shall be received for the alteration." "It may be said that if the property of the improved article, continues in the original owner, he must be paid for its detention on its full value, but I conceive that this by no means follows." Referring then to the English authorities, he proceeds :

"The only English authority, that I am aware of, which seems to oppose this view, is that of a class of cases in which the question has been, as to the mode of valuing minerals wrongfully severed and carried away. The form of the action in the first three cases, was trespass, and there it was held that the coal should not be estimated at its value as it lay in its bed, but at its price when it first became a chattel, and that no deduction could be made on account of the labor bestowed in digging it." *Mayne on Dam.*, *Tit.* "*Trover*," 291. It would appear from these extracts, there is a diversity between the American and English cases, in applying the rule of damages and the American cases themselves are far from being uniform.

The case of *Forsyth vs. Wells*, 41 *Pa.*, 291, was an action of *trover*, where the taking was by mistake, because of the uncertainty of boundaries; it is founded on Baron Parke's decision in *Wood vs. Morewood*, 43 *Eng. Com. Law*, 810. It is conceded there are cases of *trespass*, where the Judges have adopted the mode of calculating damages for taking coal, substantially equivalent to the rule laid down by the Common Pleas in the judgment appealed from, where no wilful wrong was done, and refers to *Martin vs. Porter*, 5 *Meeson & Welsby*, 351, but prefers the rule in *Wood vs. Morewood*.

*Herdie vs. Young,* 55 *Pa. State Rep.*, 176, was an action of replevin, for logs, cut and carried down to a boom. It was held where the injury was inadvertent, the measure of the damages, would be the value of the logs in the boom, less the cost of cutting and hauling them to the river, and driving them to the boom.

The *United States vs. Magoon,* 3 *McLean,* 171, was an action of trespass for digging and carrying away lead ore from the lands of the plaintiff. The defendant suffered a default and a jury were sworn to assess damages. The plaintiffs contended they were entitled to the value of the ore after it was dug, but the Court instructed the jury, that was not to be the measure of damages, but the injury done to the soil by the trespass. That the digging and carrying away by the same persons, is presumed to be a continuous act, and the lead ore removed, must be considered in aggravation of the trespass upon the soil.

The case of *Goller vs. Felt,* 30 *Cal.,* 482, was an action for wrongfully removing the gold bearing earth from a claim and extracting the gold. The value of the gold less the expense of digging and separating it from the realty, so as to make it personal property, was held to be the measure of damages.

The case of *Coleman's Appeal,* 62 *Pa.,* 278, was a bill for accounting between tenants in common. The Court said "the case of the defendants is entitled to still more favorable regard than that of a trespasser, though by mistake or ignorance. There the plaintiff's property has been taken wrongfully and against his will. Here a tenant in common exercises his undoubted right to take the common property, and he has no other means of obtaining his own just share, *than* by taking at the same time the shares of his companions. The value of the ore in place is, therefore, the only just basis of account."

The case of *The Stockbridge Iron Co. vs. Cone Iron Works,* 102 *Mass.,* 80, was a suit in equity for injury to

plaintiff's land, by digging and excavating iron and other ores. The standard of damages was said to be the value of the ore as it lay in the bed, but the point does not appear to have been discussed.

In the absence of any adjudication in this State, on the question, and the conflict of authorities in others, we must endeavor to deduce the principles which should govern in cases of this peculiar character, from a condensed statement of a few of the leading cases in England, where this species of property has long been the basis of national wealth, and often the subject of judicial consideration.

*Martin vs. Porter, 5 Meeson & Welsby,* 351, is a case very analagous to the present. That was an action of trespass for breaking and entering the plaintiff's close, and taking and carrying away coal, etc. The defendant was owner of the adjoining estate and had worked the coal under the plaintiff's land. At the trial at York Assizes, the question was upon what principle the damages were to be assessed; PARKE, Baron, was of opinion, "that the plaintiff would have been entitled in an action of trover, to the value of the coal as a chattel, either at the pit's mouth or on the canal bank, if the plaintiff had demanded it at either place, and the defendant had converted it, without allowing the defendant anything for having worked it, and brought it there; that not having made such a demand and the action being *trespass,* he was entitled to the value of the coal *as a chattel* at the time when the defendant began to take it away, that is, as soon as it existed as a chattel, which value would be its price at the pit's mouth, after deducting the expense of carrying the coals from the place in the mine where they were got to the pit's mouth," etc.

Leave was given to move to reduce the damages if the Court in Banc, should be of opinion, that the proper measure of damages, was the value of the coal in the bed.

The Barton Coal Co. *vs.* W. S. & T. C. Cox, Exc'rs, *et al.*

At Easter Term following, on motion to reduce the damages, before a full Bench, it was argued that to allow any other estimate of damages (than the value in the bed) would be to confer on the plaintiff a large profit, in the absence of any thing either done, or suffered by him, that if he retained the amount given, on the principle laid down by the learned Judge, he is paid not merely the value of the coal, but a double value. All the Judges *seriatim* decided, that the damages should not be reduced.

PARKE, B., said : "The plaintiff is entitled to be placed in the same situation as if these coals had been chattels belonging to himself, which had been carried away by the defendant, and must be paid their value at the time they were begun to be taken away. He had a right to them, without being subject to the expense of getting them, which was a wrongful act by the defendant, and for which the defendant cannot claim to be reimbursed. I am not sorry this rule is adopted; as it will tend to prevent trespasses of this kind, which are generally wilful."

This case was decided in 1839, and was followed by Lord DENMAN, C. J., in *Morgan vs. Powell*, 3 *Adol. & El.*, *N. S.*, 281, (43 *E. C. L.*, 736,) in 1842, which was also an action of trespass, for the breaking a mine, digging and carrying away coal,—and by PARKE, B., in *Wood vs. Morewood*, Derby Assizes, cited in 3 *Adol. & Ellis*, 440, (43 *E. C. L.*, 810,) in which there was a count in *trover*. See also, *Wild and others vs. Holt*, 9 *Mees. & Wels.*, 672, where the case of *Martin vs. Porter* is again re-affirmed.

*Wood vs. Morewood* was tried at Derby Summer Assizes, in 1841, before Baron PARKE. The plaintiff claimed damages on the principle laid down in *Martin vs. Porter*, 5 *M. & W.*, 351, which amounted to £6,000. The defendant contended that the jury were the proper judges

of damages, and that in this case, where there was no imputation of fraud or want of reasonable care or caution on the part of the defendant, they might assess the damages on the principle that the defendant should pay the fair price per acre at which the bed of coal would have been sold to a person who was at the expense of getting it.

Baron PARKE told the jury, "that if there was fraud or negligence on the part of the defendant, they might give as damages *under the count in trover,* the value of the coals at the time they first became chattels, on the principle laid down in *Martin vs. Porter;* but if they thought that the defendant was not guilty of fraud or negligence, but acted honestly and fairly in the full belief he had a right to do what he did, they might give the fair value of the coals, as if the coal fields had been purchased from the plaintiffs.

This case was followed by *Morgan vs. Powell,* 3 *Adol. & Ellis, N. S.,* 278, (43 *Eng. Com. L.,* 734,) in 1842, an action of trespass for breaking and entering and taking and carrying away coals, before Lord DENMAN, C. J., PATTESON, WILLIAMS, and COLERIDGE, Js. On a rule to show cause why the verdict should not be reduced by the amount of the expense of getting the coals and bringing them to the pit's mouth.

In the course of argument reference was made to the principle of estimating damages laid down at *nisi prius* by PARKE, B., in *Morewood vs. Wood.*

Lord DENMAN: "We are of the opinion that the rule in *Martin vs. Porter,* is correct and properly applicable to the present case. The jury must give compensation for the pecuniary loss sustained by the plaintiff from the trespass committed in taking his coal, compensation having been separately given for all injury done to the soil by digging, and for the trespass committed in dragging the coal along the plaintiff's adit; and the estimate of that loss depends on the value of the coal when severed;

that is, the price at which the plaintiff could have sold it. This plainly was the value of the coal itself, at that moment. The defendant had no right to be reimbursed for his own unlawful act, in procuring the coal, nor can he, properly speaking, bring any charge against the plaintiff for labor expended upon it. But it could have no value as a saleable article without being taken from the pit; any one purchasing it there would, as of course, have deducted from the price the cost of bringing it to the pit's mouth. Instances may easily be supposed where particular circumstances would vary this mode of calculating the damage, but none such appear here.''

The amount of the verdict was' ordered to be reduced by. the cost of bringing it to the pit's mouth.

However inconsistent the allowance may be with the general principles announced, it is clear that *Martin vs. Porter* was emphatically approved and affirmed, and *Wood vs. Morewood*, although referred to in the argument, was not noticed in the decision.

Again in *Wild and others vs. Holt*, 1842, before PARKE, B., ALDERSON, B., GURNEY, B., and ROLFE, B. In reply to the argument that the defendant was entitled to deduct the expense of getting the coal, etc.; PARKE, B., said, ''The case of *Martin vs. Porter*, establishes that, as against a wrong-doer, no such abatement ought to be made, but that the jury are at liberty to give as damages the full value of the coals when they just exist as chattels, in consequence of the trespass.''

Referring to the rule laid down in *Martin vs. Porter* again, he says ''which is a very salutary one, because the parties must know—at least, they may know by proper dialling—that they are trespassing on their neighbor's property.'' 9 *M. & W.*, 674.

The necessity and importance of this rule can scarcely be magnified, in a community where the wealth of the country consists in its mineral deposits; and the facts

developed in evidence, show the agents of the appellants at least, had the means of knowing, if not actual knowledge of the lines of the corporation by which they were employed. It is imposs ole in cases of this kind to discriminate between natural and artificial persons, and the latter must be held responsible for the negligence and omissions of its employés as well as their acts, in the discharge of duties confided to them.

The appellants' counsel in their brief and argument insist, that the correct basis of the rule of damages is the principle of *compensation;* that the appellees' third prayer, without reference to surrounding circumstances, requires the jury to give as damages what the coal was worth after it was severed from its native bed, without deducting the expense of severing, which was punitive in its effect, " instead of being compensated and indemnified for the injury sustained, they were enabled to realize an enormous profit out of a trespass which, for anything that the third prayer required the jury to find, might have been committed by the defendant inadvertently, and in the honest belief that it was mining its own coal."

These arguments were used in the case of *Martin vs. Porter,* though perhaps not so forcibly.

The measure of damages was defined in that case, without regard to circumstances of aggravation ; the plaintiff was said to be entitled " *ex debito justitiæ,*" to the value of the coal, as a chattel, when the defendant began to take it away, and the defendant had no right to be reimbursed for doing a wrongful act, a rule which was necessary to prevent trespasses which were generally wilful.

We do not understand that the appellants contend that a different rule of damages prevails in trespass, *q. c. f.,* and trover, or that any objection is made to the rulings in consequence of the form of the action.

Although such a distinction is adverted to in some of the authorities, it applies rather to the allowances to be made, in consequence of the time and mode of the demand; than to any variance in the principle of right, in adjusting the compensation, except where circumstances of aggravation are relied on in trespass.

Mayne, in his work on Damages, 290, states the rule as being the same in both forms of action.

The rule prescribed by the third prayer of the plaintiffs conforms in principle to that in *Martin vs. Porter*, and the cases of *Morgan vs. Powell*, and *Wild and others vs. Holt*.

The appellees' fourth prayer differs from the third in *asserting that knowledge* on the part of the defendant, that the "*locus in quo*" was not its own lands, at the time the trespasses were committed, entitled the plaintiffs to exemplary damages; the correctness of which is impliedly admitted by the appellants in their argument, that this circumstance was a proper consideration, upon a question of exemplary damages, and should have been incorporated in the third.

Every trespass, whether wilful or not, is an injury, for which the party wronged is entitled to compensation, and the measure of compensation, prescribed by the third prayer, was the lowest established by law, in this peculiar class of cases, independently of all aggravating features.

The Court below, was therefore right in rejecting the testimony proposed in the third and fourth bill of exceptions, and in granting the appellees' third prayer. The cases to the contrary, are generally cases in equity, where greater latitude is assumed by the Courts in controlling the rights of the parties.

The appellant's second prayer, being the converse of the proposition contained in the appellees' third, is disposed of by the views above expressed, and was, in our opinion, properly rejected for the reasons assigned.

The first prayer of the appellant, which is included in his fifth bill of exceptions, is based upon the theory that it was not competent for a witness not present at the survey to testify for the plaintiffs, to prove any object connected with the survey, or intended for illustration thereof. This prayer is understood to refer to the testimony offered in *the plaintiffs' first* bill of exceptions, which is not before this Court, and in which the Court rejected the testimony indicated in the appellant's prayer; to that extent the appellant had the benefit of the principle involved in it, but however correct such ruling might be, when applied to any particular witness, at the time of the examination, a general instruction, after the testimony was closed, that if they find from the evidence, etc., any of the witnesses were not present, etc., such an objection would be too late, upon the well established principle, that excepting to testimony must be taken before, or at the time of its being submitted; it cannot be raised after the testimony is closed, except upon a general reservation of all exceptions to evidence, and then the particular evidence objected to should be pointed out. The appellant's first prayer was therefore properly rejected, no reservation of this kind appearing, and nothing in the record indicating to what witness or witnesses it was intended to apply.

The appellant's fourth, fifth and eighth prayers, included in his fifth bill of exceptions, affirm, first, that if the jury find that John A. Smith executed the will offered in evidence by the plaintiffs, then the will vests the title to the "*locus in quo*" in Sally Smith, the devisee, and no injury to the lands, as real estate, and to the fee in said lands, can be recovered by the executors of John A. Smith, under the pleadings and evidence in the cause. Secondly, that the executors cannot recover on the pleadings and evidence, for any injury done to the lands which would affect their value, as coal lands, after the testator's death.

Thirdly, that the executors, are not entitled to recover on the pleadings and evidence, for any damages to the coal now remaining in the lands in controversy and which would affect the right and interest of Mrs. Smith as devisee.

The argument in support of these propositions, as condensed from the brief is, that the declaration claims only damages for mining and carrying away coal; there is no allegation of injury done by unskilful mining, and gives no notice that such damages would be claimed as were claimed under the rulings of the Court in the third and fourth prayers of the plaintiffs; such damages, could only be claimed on a special allegation: Mr. Smith, having devised all his estate real, personal and mixed, to Mrs. Smith, the lands in controversy passed to her, and such damages as did not result necessarily and during the life of the testator, but would only affect their value as coal lands, after his death, could not be recovered, under the declaration which did not set them out specially.

That the damages claimed are partly for mining improperly, etc., whereby the lands were injured as coal lands—for which the executors could not recover, because that was recoverable by the devisee in her own right.

The action in this case, as we have seen, was instituted in the life-time of the testator Smith, by his co-plaintiffs and himself, holding as alleged in the third count undivided portions in fee simple in the lands; the trespasses alleged, were injuries to their right and estate as tenants in fee, and any act of trespass, which impaired the value of the estate, either temporarily, or permanently, gave the plaintiffs but one cause of action; the *narr.* charged sundry trespasses between the 21st of August, 1864, and the day of instituting the suit, less than three years; the injuries complained of, are digging and sinking divers mines, drifts, pits, shafts, etc., of great length, breadth and

depth, and from out of said mines, etc., raising earth, soil, stones, coal, iron ore and other minerals, etc., and taking and carrying them away; operations of this kind could not be continuously carried on for a series of years, without impairing the fee simple value of the land, in the life of the testator; and his co-plaintiffs and himself, and his executors after him, had the right to recover the full value of the property injured, even if it absorbed the fee simple. The devisee took only what remained, after the testator's death. She could institute no action for the consequences of the trespass committed in the testator's life; there could be but one satisfaction for the injuries done him.

Opening of mines is a species of waste, which tends to the permanent and lasting loss of the person entitled to the inheritance; *vide Cruise's Digest, title III, ch.* 11, *sec.* 16. A tenant for life cannot open a new mine. The *narr.* therefore charged the most serious injury which could have been inflicted on the fee, or inheritance, and necessarily involved all the natural results of waste, for which damages were recoverable without further specification. *Art.* 75, *of the Code of P. G. Laws*, enacts, that "whatever facts are necessary to constitute the ground of action, shall be stated in the pleading and nothing more." "Any declaration which contains a plain statement of the facts necessary to constitute a ground of action shall be sufficient."

The appellant argues, that trespass *q. c. f.*, is a possessory action, and damages for injury to the possession only, can be recovered; injuries to the corpus of the land, however destructive, because it operates on the value of the fee, cannot be compensated in an action for damages by the executors. The injury is one entire thing, if it occurs in the life of the owner of the fee, he, or his executors are the only persons competent to sue for and

recover the damages commensurate to the loss sustained.

As far as these prayers attempt to raise the objection, that there was a variance between the declaration and the evidence, they do not present that question generally, but in a very qualified form.

The fifth prayer affirms that the executors of John A. Smith cannot recover on the pleadings and evidence in this cause, for any injury done to the lands in controversy, *which would only affect their value as coal lands after the death of the testator.*

The eighth re-affirms the same proposition in different language,—" the said executors of John A. Smith are not entitled to recover on the pleadings and evidence in this cause, for any damages to the coal now remaining in the lands in controversy, which would affect the right and interest of said Sally Smith, as devisee," etc.

The predominant idea presented in these prayers, is, if the injury was such as impaired the value of the fee, the executors could not recover. We have anticipated and answered this objection, but assuming the objection was intended in its broadest and widest sense—

This is not like the case where the point was raised below, by objecting to the *admissibility of the evidence,* as in *Ellicott & Lamborne,* 2 *Md.*, 132, where the declaration charged that earth, sand, etc., were washed into the plaintiff's mill-dam, so as to render it useless in working his mill, and the evidence offered was that the stream was rendered so impure, that it was unfit for washing rags, so as to fit them for making *white paper.* There the variance was broadly presented *in limine,* and the attention of the Court necessarily called to the *allegata* and *probata*—but in the present instance, the objection is not to the right to recover because of variance, but because of its supposed effect upon certain interests of persons not parties to the cause. The real objection, if intended

The Barton Coal Co. *vs.* W. S. & T. C. Cox, Exc'rs, *et al.*

to be made, was masqued under a form of words, which entirely concealed it.

These prayers point to the pleadings and raise an objection which was untenable, and being correctly rejected on that ground, they cannot now be used, for the purpose of presenting points which do not appear from the record to have been raised below.

The appellant's ninth and tenth prayers, included in his fifth exception, are covered by our remarks on the preceding.

No specific objections have been made in argument, to the granting of the appellees' first and second prayers, besides those embraced in the argument of the appellant's fourth, fifth and eighth prayers. The reasons which sustain the action of the Court below, in rejecting the latter, apply with equal force in maintaining the propriety of granting the former.

Finding no error in the several rulings of the Court below, by which the appellants were prejudiced, the same will be affirmed.

*Judgment affirmed.*

(Decided 10th July, 1873.)


ROBINSON, J., dissented as to the measure of damages.