BLUNT (UNITED STATES v.). See Case No. 14,615.

## Case No. 1,581.

BLY v. UNITED STATES. HARTLEY et al. v. UNITED STATES. UNITED STATES v. DAY et al.

[4 Dill. 464.][1]

Circuit Court, D. Minnesota. 1877.

CUTTING TIMBER UPON PUBLIC LANDS—EVIDENCE—REMEDY OF GOVERNMENT — INDICTMENT—REPLEVIN—TROVER—MEASURE OF DAMAGES.

1. In certain civil and criminal actions by the United States against trespassers upon its unsold timber land: *Held*, that the official plats and books in the office of the register of the United States land office are admissible as evidence on its behalf to show that the land on which the timber was cut had not been sold by the United States.

2. Parol evidence is not admissible on behalf of the defendants to show that the locus in quo was swamp land within the meaning of the swamp land grant to the several states.

3. The cutting of timber upon the public lands is a criminal offence (Rev. St. § 2461), and the government may proceed both civilly and criminally.

[Cited in U. S. v. Murphy, 32 Fed. 379.]

4. Where timber is cut upon the public lands wilfully, fraudulently, or negligently, and without authority, and made into saw-logs, the government may replevy such logs even when they have reached the boom, or, at its election, may sue in trover for their value, and in either case may recover without deduction for their enhanced value, after severance from the freehold, arising from the labor of the wrong-doer. In such case the government is not confined to the "stumpage" value. Nesbitt v. St. Paul Lumber Co., 21 Minn. 491.

[Distinguished in Murphy v. Dunham, 38 Fed. 511.]

5. Whether a different rule of damages would apply if the trespass were neither willful, fraudulent, nor negligent, quaere?

[Error to the district court of the United States for the district of Minnesota.]

The government has brought numerous civil suits in the nature of trover to recover the value of pine saw-logs cut upon the public lands by the defendants [E. F. Bly, B. F. Hartley, and others] or their vendors, and which, before the suits were commenced, had been rafted and brought down into the booms at Minneapolis, Brainerd, and other places. It has also caused the persons [Day and others] who cut the timber to be indicted. Certain questions of law arising in these cases were argued and decided as shown in the opinion of the court.

Mr. Billson, Dist. Atty., for the United States.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

Davis, Bradley, Secombe and others, for plaintiffs in error.

Before DILLON, Circuit Judge, and NELSON, District Judge.

DILLON, Circuit Judge. 1. I am of opinion that the official plats and books in the office of the register of the United States land office, produced and explained by that officer, were admissible in evidence on the part of the government to establish, or as tending to establish, the fact that the lands in question had not been sold by the United States.

These plats and books are the official records of the office, and are kept by the register so as to show what lands are taken under the pre-emption, homestead, or other laws of the general government. These official records, in connection with the testimony of the register, showed that the locus in quo was vacant land which had never been disposed of by the United States, and were sufficient prima facie to establish that fact. Galt v. Galloway, 4 Pet. [29 U. S.] 332, 343.

2. Where the proof shows that the lands have not been sold or disposed of by the United States, and the government proves that the defendant cut timber thereon, and the defendant introduces no evidence of right or title from the United States or the state, we are of opinion that parol testimony on his behalf is not admissible to prove that the locus in quo is "swamp" land within the meaning of the swamp land grant.

3. The cutting of timber upon the public lands is made a crime by the legislation of congress, which may be prosecuted by indictment (Rev. St. § 2461), notwithstanding the provisions of section 4751. And the government may proceed against trespassers upon its land, civilly or criminally, or both, at its election, and judgment in one form of remedy is no bar to the prosecution of the other remedy. The principle of the decision of Mr. Justice Miller in U. S. v. McKee [Case No. 15,688], has no application to such a case.

It sues in these cases civilly, as the proprietor of the trees or timber which have been unlawfully cut and removed from its lands, to recover the value thereof. And it prosecutes the trespassers criminally in its sovereign capacity for a violation of its criminal statute in that behalf.

4. Where timber has been cut into logs upon the public lands by a person who knows that the land belongs to the government, or who has no reasonable ground to believe that it belongs to him, or to some one under whom he claims, and such logs are by him hauled to the water-course, and rafted and taken to a distant boom, by means of which labor of the wrong-doer their value is much enhanced beyond their value when first severed from the freehold, the government may replevy such logs in the boom, or may maintain an action in the nature of trover for their value, and in either case may recover without deduction for the enhanced value which may have been given to the logs after the severance from the freehold, by the labor of the wrong-doer. In such a case the government is not confined to what is called the "stumpage" value, but may recover the value of the logs in the boom.

As in such case the title of the government to logs thus cut continues as against the wrong-doer and all persons (Tome v. Dubois, 6 Wall. [73 U. S.] 548), until at least there has been some greater transformation of the original property than exists while it remains in the shape of logs, if the wrong-doer sells the logs to a person who has no actual notice that they were cut on the public lands, still the government may maintain replevin against such vendee for the logs, if they are in existence, or if he has sawed them into lumber (which is a conversion of the logs), the government may recover from him the value of such logs, when so manufactured into lumber, and is not confined to the "stumpage" value.

On this last proposition the authorities are conflicting, and we adopt and follow the decision of the supreme court of the state upon the point. Nesbitt v. St. Paul Lumber Co., 21 Minn. 491.

The rule above laid down is the only one which will effectually protect the timber lands of the government which are remote from settlements and in the wilderness. As against the willful or negligent trespasser the rule of damage indicated is not unjust, and as against his vendee it is perhaps the logical and necessary result of the property in the logs still remaining in the government. At all events, it is the rule which has been approved by the supreme court of the state in the case before cited.

It may also be observed that the conclusions reached have a strong support in the adjudicated cases. Silsbury v. McCoon, 3 Comst. [3 N. Y.] 379; Riddle v. Driver, 12 Ala. 590; Betts v. Lee, 5 Johns. 348; Ellis v. Wire, 33 Ind. 127; Schulenburg v. Harriman [Case No. 12,486].

But there are cases which assert principles more or less in conflict with the cases just cited. Moody v. Whitney, 38 Me. 174; Single v. Schneider, 30 Wis. 570; Wetherbee v. Green, 22 Mich. 311,—an instructive case.

There is also a class of cases, English and American, which hold that where coal or mineral ore is taken by one person from the land of another, the ordinary measure of damages in trespass or trover is the value of the coal or mineral when it first became a chattel, or was converted, and not the value of the coal or ore in place, or as it lay in the earth. The principal cases on this subject are cited and commented on in Barton Coal Co. v. Cox, 39 Md. 1; McLean County Coal Co. v. Long (Sup. Ct. Ill.; Oct., 1876) 81 Ill. 359; In re United Merthyr Collieries Co., L. R. 15 Eq. 46, 5 Eng. Rep. (Moak's Ed.) 707.

The cases last referred to have generally arisen between adjoining owners, and the mitigated rule of damages which they lay down may have been adopted in consequence of the difficulty of ascertaining boundaries in subterranean mines, and it does not apply where the trespass is fraudulent, or willful, or negligent. At all events, the doctrine of these cases should not be extended to cases of willful or negligent trespasses upon the public timber lands of the government.

If a private proprietor of timber lands used due precautions to ascertain his boundaries, and, by mistake of the surveyor, or without negligence or fault on his part, or that of his servants, unintentionally cuts on the adjoining lands of the government, he in good faith supposing he was cutting on his own lands, and the government neglected or delayed to bring trover until the logs thus cut were enhanced in value two or three hundred fold by the labor of bringing them to market, in such a case it may be that the court would be warranted in directing the jury to allow as damages the value of the logs when first severed, and interest on that value.

I am inclined to think the true doctrine of the measure of damages in trover is sufficiently flexible to allow this to be done when justice requires no greater recovery; but the cases now before the court do not require a judgment on the point, and I leave it open for further consideration, should it arise.

Judgment accordingly.

NOTE [from original report]. The owner of land may replevy timber severed by a wrongdoer; and accordingly it has been held that the United States may maintain replevin for timber cut on the public lands, and even for timber cut and sold by Indians on land reserved to them, as the fee is in the government, and only a right of occupancy in the Indians. Johnson v. McIntosh, 8 Wheat. [21 U. S.] 574; U. S. v. Cook, 19 Wall. [86 U. S.] 593; Beecher v. Wetherby [95 U. S. 517].

In an action of ejectment (Clowser v. Joplin Mining Co.) in the western district of Missouri, at the April term, 1877, the circuit judge (Krekel, J., concurring), charged the jury as follows, in respect to the measure of liability for ores taken out of the land and sold by the defendant: "On this subject, no uniform rule applicable to all circumstances and all cases exists. Here is a case where (if the plaintiff is entitled to recover at all) the parties were in fact tenants in common, and where each party claimed the whole, and each denied any right in the other; where the defendants were rightfully in possession (for one tenant in common has as much right to the possession as another); where the plaintiff was absent, and for years had paid no attention to the land; where the defendants developed, if they did not discover, the lead mines and worked the same and took ore therefrom; the defendant company was organized and went into possession in 1874, the plaintiff appeared and set up a claim to the land in 1875, each party then claiming the whole. Under such circumstances, the court approves the rule laid down by the supreme court of Pennsylvania: Where 'a tenant in common exercises his undoubted right to take the common property, and has no other means of obtaining his own just share, than by taking at the same time the share of his companion—the

value of the ore in place is the only just basis of account.' Coleman's Appeal, 62 Pa. St. 278; Barton Coal Co. v. Cox, 39 Md. 1, and cases cited. Under the statute of Missouri this rule may properly be applied in measuring the right to a recovery in respect to ores taken when one tenant in common recovers in ejectment against another." Wag. St. p. 560, § 13.