(Decided 11th July, 1882.)

## CHARLES PARKER *vs.* HARRISON WALLIS.

*Action of trespass quare clausum fregit—Possession—Acts of trespass—Ouster—Practice in regard to Survey where Location is in dispute—Art. 75, secs. 53 and 54, of the Code—Where the statement of a Surveyor is inadmissible—Effect of erroneous Instruction, where no harm results from it.*

Where a person holds under a paper title, apparently good, to a parcel of land described by name, courses, and distances, and is in the actual and undeniable possession of a part of the land; in such case possession of part is a possession of the whole of the land covered by, or embraced in his title papers; and such title, with

such possession, are sufficient to maintain the action of trespass *quare clausum fregit.*

Where all that the defendant had done was to dig sand on and from the land from time to time, and sell the same; his entries thereon for that purpose were but successive acts of trespass against the true owner, if he was not owner himself.

To work an ouster the acts must be such as indicate to the world a claim of right to the land; acts of exclusive and continuous possession, open and notorious, and unless under color of title, must have continued for twenty years.

Whenever there is a dispute about the location of lands, the practice is to have a survey, in order that the question may be settled. The necessity for such survey in such case is not done away with by the Code, but is preserved for cases of this kind, where the dispute is over location and boundaries. (Code, Art. 75, secs. 53 and 54.)

No statement of a surveyor as to what land is included in a patent,—unless the patent was located by actual survey, (by plat exhibited to the Court,) whereby it appeared that such survey was made upon legal proof of the beginning bounder, or other well established bounder, whereby the beginning could be found; and that such survey was made in accordance with law and conformable to a proper construction of the title paper located,—can be held sufficient to show title out of the plaintiff, and in another.

An erroneous instruction furnishes no ground for a reversal if the appellant suffers no injury from it.

APPEAL from the Circuit Court for Prince George's County.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ALVEY, ROBINSON, and IRVING, J.

*Marion Duckett,* and *Daniel R. Magruder,* for the appellant.

*C. C. Magruder, Jr.* and *Frank H. Stockett,* for the appellee.

Parker *vs.* Wallis.

IRVING, J., delivered the opinion of the Court.

This was an action of trespass *quare clausum fregit*, brought by the appellee against the appellant, for the breach of the appellee's close, which is described in the declaration as called "Taylorsburg," and lying in Prince George's County, and described in a deed from Margaret E. Lowrie and Emmerline Sheriff, dated July 28th, 1866, duly recorded.

The defendant pleaded not guilty. Under this plea, and issue joined thereon, the defendant contended, that the plaintiff was remitted to an action of ejectment, to recover the possession of the land, before he could bring trespass, because he was not in the actual possession thereof, having been ousted, as defendant contended, by him who had entered and was in possession by title paramount to that of the plaintiff. If the appellant was able to maintain this construction by satisfactory proof, there can be no doubt that the verdict should have been in his favor. In fact, it needs the citation of no authority for the further position, that if the defendant could show, by legally sufficient evidence, that the *locus in quo*, alleged to have been invaded, did not belong to the plaintiff, and he was not in the actual possession of it, the defendant would not be liable in this action, although he failed to show title in himself. In other words the rule is undeniable that a plaintiff in trespass *quare clausum fregit*, must recover on the strength of his own title, or actual possession against a wrong-doer. *Norwood vs. Shipley,* 1 *H. & J.,* 295, *&c.*

The plaintiff in this suit holds by deed set out in his declaration. His deed is by courses and distances, and he traces title back to Benjamin Lowndes, who took deed from William Stewart on 27th of July, 1804. Both the Lowndes and the Lowrie deed called the land "Taylorsburg," and they both confessedly covered the same land. The defendant admitted of record the plaintiff's

title to "Taylorsburg," and his own witnesses proved as a matter of fact, that the *locus in quo* was within the lines of the plaintiff's deed, and within the lines of "Taylorsburg." This was testimony of defendant. In fact there seemed to be no contention on that score, but both below, and in this Court, the contention was based on the ground that the defendant claimed under older and better title, which overlapped upon the plaintiff's paper title, and took the *locus in quo* from him.

It was admitted that the plaintiff was in possession of part of the land covered by the deed. This admission was made at the hearing; but independently of the admission, the plaintiff established by proof actual possession of part of the land embraced in his deed. But the defendant as a matter of fact denies that he was in possession of that part of it, whereon was the *locus in quo*. The plaintiff does not contend, that he ever cultivated the part in dispute, or enclosed it; but rests his claim to possession on the actual possession of part, and *certain acts* with reference to the *locus* as proving actual possession, which acts, or the evidence of them is excepted to. With the view we have of the case, however, it will not be important to decide upon the admissibility of the testimony objected to.

Here then we have a plaintiff holding under paper title apparently good, to a parcel of land described by name, courses and distances, and in the actual and undeniable possession of part of the land. In such case, possession of part is a possession of the whole of the land covered by, or embraced in his title papers. *Gibson vs. Martin*, 1 *H. & J.*, 545; *Casey's Lessee vs. Inloes, et al.*, 1 *Gill*, 496; *Gent vs. Lynch*, 23 *Md.*, 58.

Such title, with such possession as this plaintiff had, therefore, were sufficient to maintain this action against a trespasser; and unless the alleged trespassing defendant had paramount title, or had acquired such actual posses-

sion as amounted to an ouster of the plaintiff from the part of the land included in plaintiff's deed, which is the subject of dispute against him.

We are all clearly of opinion, that there was no such disseisin of the plaintiff, by the defendant, and possession of the same by him, as to defeat the action of trespass by one having title, and either actual or constructive possession. The land, of which the defendant claims to have obtained possession and ousted the plaintiff, is an outlying unenclosed lot, known as the Sand lot. Since this action was brought, the defendant has built a shop on it; but when the alleged trespasses were committed, the defendant did not occupy the land, did not cultivate it, and had not enclosed any part of it. All that he had done was to dig sand on and from it; from time to time and to sell the same. The entries thereon for that purpose were but successive acts of trespass against the true owner, if he was not owner himself. We are unable to distinguish it from the case of *Gent vs. Lynch*, 23 *Md.*, 65, in this respect. It appeared that the defendant had at one time obtained injunction against somebody for getting sand on this lot; but the plaintiff was not a party, and not in any way affected by it. The statement of a witness that since the injunction the defendant was the only person in possession controlling the land, does not establish possession without indicating the acts of possession. It could only refer to his acts of getting and selling sand from the lot in question, which are the only indications he gave of a claim to the land, being the same kind of acts of which the plaintiff testified himself, and proved by others (he plaintiff) was doing, selling sand therefrom. To work an ouster, the acts must be such as indicate to the world a claim of right to the land—acts of exclusive and continuous possession, open and notorious; and unless under color of title, must have continued for twenty years. We will now inquire whether the defendant had such paramount title

to the *locus in quo*, that the alleged acts of possession may be referred to a lawful possession under such title.

The defendant claims the land under deed from Jane C. Penn, dated April 1st, 1881. This suit, it may be mentioned here, was brought in September following. The defendant's deed is not by courses and distances, but by calls, starting, it says, from the end of their line of "Yarrow." After giving the general direction of the lines and calls, it then adds, all "lands owned by Hanson Penn" not already conveyed away by his executors or the grantor. The will of Dr. Hanson Penn was also offered in evidence by the appellant to show Mrs. Penn's title. By that will, in respect to his real estate, Dr. Penn directs as follows; "My will and desire is, that all my real estate shall be sold by my executrix and executor hereinafter named, or either of them, for such price or sum of money, and upon such terms as they, or either of them, shall think best, whenever my dear wife shall desire a sale thereof, and the proceeds of sale of said real estate invested by my executrix and executor hereinafter named, or either of them, in some safe and productive fund for the sole and exclusive use and benefit of my dear wife." Mrs. Jane C. Penn and Nicholas Carroll Stephen were appointed executors. It appears Mrs. Penn renounced the executorship, and letters testamentary were granted to N. C. Stephen, the other executor, who sold all the land of the testator, and conveyed the same to the purchaser, James P. Magill. This very clearly appears from the bill in chancery, filed by Mrs. Penn in the Circuit Court for Prince George's County, to have the proceeds of the real estate applied to pay debts, to save the personalty which she did not want sold, and the other proceedings in the cause. It is very clear that by the will, after her renunciation of the executorship, and Stephen took charge and sold the estate, Mrs. Penn had no right to the control of her husband's real estate; and had no legal title thereto. The

defendant therefore could get no legal title to any part of that estate, from her. His deed therefore, from her, gave him no right of entry thereon. It would seem also that Mrs. Penn did not recognize her right to convey the estate and only executed the deed to the defendant, upon assurances that he would take all risks of law suits, growing out of it. All the proceedings, in the Chancery Court referred to, show, that the whole real estate of Dr. Penn, consisted of a tract of land called "Yarrow," and that the *whole of that tract* was sold by the executor to Magill, and was conveyed to him. The contention of the defendant, is that the courses and distances of the Magill deed does not take all the land "Yarrow," and that the remaining portion was what was attempted to be conveyed by the deed of Mrs. Penn, to defendant. We have said the defendant took *no* title under his deed from Mrs. Penn, and but one ground of defence set up remains to him, namely, that the title to the *locus in quo* was not in the plaintiff, but was in another. Of this we do not think there is any proper legal evidence. The plaintiff has shown a title which is *prima facie* good, and to take away his rights it must appear, that some *older* patent, than that under which he claims, and to which he must trace, takes the land for somebody else. In proof of this, the patent of "Yarrow" is exhibited in evidence, and with it the statement of a surveyor is made that this patent includes the *locus in quo.* There has been no survey in the cause by order of the Court, and no location of that patent showing, that by properly starting at the beginning bounder, well established, such will be the result. Wherever there is dispute about the location of lands, the practice is to have a survey, in order that the question may be settled. The necessity for such survey, in such case, is not done away with by the Code, but is preserved for cases of this kind, where the dispute is over location and boundaries. Code, Art. 75, secs. 53 and 54. The conten-

tion, of the defendant here, rests *entirely* upon the theory that "Yarrow" overlaps "Taylorsburg," which latter, it must be remembered, is *admitted* by defendant to belong to the plaintiff by good title. "Yarrow," it is claimed, being older in date takes the land in dispute from the plaintiff, and defeats his right to this action against the defendant. The only evidence of such overlapping is the statement of a surveyor, that such is the fact. The impropriety of accepting such statement as legally sufficient evidence thereof, is apparent from other indisputable facts in the case, to which partial allusion has already been made. Dr. Penn owned the tract "Yarrow," and owned no other land. By will he directed it to be sold. It was sold by his executor, Stephen. Before sale, it was surveyed by order of the trustee, and afterwards by order of the Court, and it was not so located as to overlap "Taylorsburg," and include any of plaintiff's land. The executor claimed that survey to be correct, and laid no claim to plaintiff's land. The patent of "Yarrow," on its face professes to grant land "on the North side of the Eastern Branch of Potomac River." Nothing on the face of the patent indicates, that any line of it crosses to the other side of the river. The Snowden plat made by the executor, and adopted by the Court, the same having been run by the Court's order, (for settlement with purchaser,) the courses of which are in the record, locates the tract wholly on the *north side* of the river. By the *north side* is to be understood the north side of the river, according to its general and prevailing direction. The patent, on its face, clearly indicates that "Yarrow" lies entirely on one side of the river, and that side is opposite to the side on which the *locus in quo* is situated. Manifestly no statement of a surveyor that it includes land on the plaintiff's side of the river, and plaintiff's land, unless the patent was located by actual survey, (by plat exhibited to the Court), whereby it appeared that such survey was made upon legal

proof of the beginning bounder, or other well established bounder, whereby the beginning could be found; and that such survey was made in accordance with law, and conformably to a proper construction of the title, properly located, can be held sufficient to show title out of the plaintiff, and in another. To make such statement evidence, the Court must know whether his statement is *legally* warranted.

The evidence, offered by the defendant for that purpose, was legally insufficient to show title, or color of title in himself, or to prove title out of the plaintiff and in somebody else. We will now apply these principles, which must control, to the prayers. At the close of the plaintiff's testimony, and before offering any testimony in defence, the defendant offered the prayer contained in the fourth bill of exceptions, substantially asking the Court to say, that under the proof and pleadings the plaintiff had failed to show any such title or right of possession as entitled him to recover. From what we have already said it is clear the Circuit Court was right in rejecting this prayer.

At the close of the case the plaintiff offered two prayers which were granted, and the defendant four which were rejected, and this action of the Court in that regard forms the subject of the sixth exception.

The first prayer, in substance, simply asked the Court to instruct the jury, that if they found the defendant broke and entered the plaintiff's close and took and carried away sand from the plaintiff's land, in a large number of carts, boats, and wagons, then the plaintiff was entitled to recover "such sum, per cart load, boat load, or wagon load, as they might find the said sand, gravel, soil, or earth respectively were worth, when so hauled, sold, or disposed of by the defendant, and such damages as the jury may think, from all the facts and circumstances of the case, the plaintiff may be reasonably entitled to." We understand this prayer to declare the measure of damages in accord-

ance with the rule laid down in the *Barton Coal Co. Case,* 39 *Md.*, 1; which we think is the correct rule for such a case. It seems to have been so understood by the appellant, for no objection was made to it in respect to the measure of damages laid down, and is therefore unobjectionable.

The other prayer, granted on behalf of the plaintiff, substantially instructed the jury, that if they found Dr. Penn made a will directing his executors to sell all his real estate and leaving Mrs. Penn and N. C. Stephen, executors, and that Mrs. Penn renounced the trust, and Stephen took out letters testamentary alone, and sold the land, and should find the equity proceedings offered in evidence and the confirmation of the sale, by the Court, to Magill, and that the real estate was surveyed under the order of the Court, and a plat made and filed in the equity cause by Snowden, former surveyor of Prince George's County, which plat embraced all the real estate of Dr. Penn, and that a deed was accordingly executed to Magill for the land, incorporating the courses and distances of Dr. Penn's real estate according to such plat, and that Magill or his grantee was seized of it, that then Mrs. Penn could not execute any valid deed to the defendant of the real estate included in her deed to defendant offered in evidence, "and the plaintiff is entitled to recover." So far as this instruction was intended to tell the jury, and did tell them that Mrs. Penn had no title to convey and did convey none to the defendant, the instruction was proper, and it is needless to say more than we have already said, on that subject. But, as the jury were told, that upon these facts "the plaintiff was entitled to recover," without reference to the first prayer, there was conceded error. Still the appellee contends that it was an error for which reversal should not be accorded, for it is manifest the defendant suffered no injury from it. This rule, invoked by the appellee, has been so often applied in this Court it needs

Parker *vs.* Wallis.

no citation of authority for its application again, as we think this case requires. The first prayer had put the case as fairly as the defendant had any right to ask.

The prayer under discussion declared no measure of damages, and was manifestly *only intended* to pronounce the title claimed by defendant was not good, and afforded him no defence. Inasmuch therefore, as the acts for which defendant was sued were not denied, but were sought to be justified, and were made the basis of adverse claim to the property, which the Court did not sustain, there was no escape from a verdict for plaintiff. The damages found by the jury can in no way be referred to the error of form in the conclusion of this prayer; therefore, it follows, that no injury has been suffered by reason of the granting that instruction, and judgment will not be reversed because of it.

The first prayer of defendant was the reproduction of the prayer offered at the conclusion of plaintiff's evidence, and was properly rejected. The second prayer of defendant could not be granted for want of evidence legally sufficient to sustain it. The third prayer raises in another form the questions of evidence contained in the bills of exception we have not found it necessary to pass upon, as the verdict must have been the same whether the testimony excepted to was admitted or not, and needs no comment or action at our hands. After all we have already said in this opinion, we need say no more of the fourth prayer of the defendant, but that it presented an untenable theory of the case and was correctly refused. For the reasons assigned the judgment will be affirmed.

*Judgment affirmed.*

(Decided 8th March, 1883.)