Edward W. Kriete *vs.* Thomas J. Myer & Co.

*Statute of Frauds—Memorandum of the Sale of goods—Time of delivery—Reasonable time—Custom or Usage—Practice in Appellate Court.*

It is not necessary in the *written* note or memorandum of the sale of goods, required by the Statute of Frauds, that the *time of the delivery* should be stated, provided no time was fixed in the parol agreement.

If no time be fixed in the agreement, for the delivery of the goods sold, the law will imply that it is the duty of the seller to deliver them in a reasonable time; and what is a reasonable time must depend upon the circumstances surrounding the case, and the character of the goods dealt in.

If there be an established custom among merchants who deal in the particular goods sold, regulating the time of such delivery, the delivery will be regulated and controlled by such custom.

But if a time for the delivery of the goods *be fixed* in the verbal agreement of sale, such time must be incorporated in the written note or memorandum thereof.

Before a case will be reversed, it must appear, not only that the instruction complained of was erroneous, but that the appellant was prejudiced thereby.

Appeal from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First and Second Exceptions*, stated in the opinion of the Court.

*Third Exception.*—At the trial the plaintiffs offered the three following prayers:

1. That if the jury believe from the evidence, that on the 11th of May, 1881, the witness, Waidner, was en-

Kriete *vs.* Myer & Co.

gaged in business as a commercial broker, under the name of H. A. Waidner & Co., and as such, was authorized by the defendant to sell the 1000 cases of peaches mentioned in the declaration, and that in pursuance thereof, he did sell said peaches to the plaintiffs on terms which he was authorized to make, and sign the memorandum of sale of May 12th, 1881, offered in evidence; and shall further find, that no time of delivery was agreed upon between the parties, and that said memorandum of sale contains substantially all the terms upon which such sale was made, and that the plaintiffs were always ready to receive and pay for said peaches, and defendant has always refused to deliver the same, then the plaintiffs are entitled to recover.

1½. That even if the jury should find that a time of delivery was verbally agreed upon in the Waidner sale, testified to, and such time is omitted from the memorandum, such omission will not affect the plaintiffs' right to recover, provided the jury find that by a general and uniform usage in the peach packing trade, the time for delivery would be the same as verbally agreed upon.

2. That if the jury find for the plaintiffs under the first instruction, then it was the duty of the defendant to deliver said peaches at such time as the jury may find was determined by the usage of the fruit packing trade, provided they find that there was a general and uniform usage which determined the time for delivery. But if the jury should find that there was no such usage, then it was the duty of defendant to deliver said peaches within such time after the close of the peach packing season of 1881, as in their judgment they may find from the evidence was a reasonable time, under the circumstances, and the plaintiffs are entitled to recover the difference between the price at which the jury may find said peaches were sold and the market price of similar peaches at the time, which, under this instruction they may find was the time when it was the duty of defendant to deliver said peaches.

And the defendant offered the six prayers following:

1. That if the jury find from the evidence that the witness, Waidner, verbally agreed with the plaintiffs, on the 11th day of May, 1881, to sell to them on account of the defendant, 1000 cases of peaches, on the terms of a contract for the purchase of another 1000 cases that had then been made between the plaintiffs and the defendant, through Levering & Price, brokers, and if they find that one of the terms of said last mentioned contract was, that the peaches should be delivered on or before the 5th of October, 1881, then the written memorandum dated the 12th of May, 1881, signed by Waidner & Co., is insufficient to charge the defendant, and their verdict must be for the defendant.

2. That if the jury find from the evidence that it was one of the terms of the alleged verbal agreement between the plaintiffs and H. A. Waidner, that the peaches mentioned in said agreement should be delivered on or before the 5th of October, 1881, then there is no evidence in this case legally sufficient to entitle the plaintiffs to recover, and their verdict must be for the defendant.

3. That if the jury find from the evidence that the terms of the verbal contract, alleged to have been made by the plaintiffs with Waidner, were the same as the terms of the contract made on the 6th of May, by Price & Levering, in the name of A. W. Kriete & Co., with the plaintiffs, offered in evidence, then there is no sufficient legal evidence in this case to entitle the plaintiffs to recover, and their verdict must be for the defendant.

4. That if the jury find from the evidence that the alleged contract between plaintiffs and H. A. Waidner for the sale of 1000 cases of peaches, was not made until after the authority given to said Waidner had ceased, or was revoked, their verdict must be for the defendant.

5. That if the jury cannot find any usage of the kind mentioned in the plaintiffs' second prayer, unless they

find from the evidence that such usage was uniform and general in the peach market in the City of Baltimore.

6. That there is no evidence in this case of any contract enforceable against the plaintiffs by which they agree to purchase through H. A. Waidner, from the defendant, 1000 cases of peaches, and if the jury find that the verbal agreement alleged to have been made between said Waidner and the plaintiffs for the sale of said 1000 cases was on the same terms as those contained in the contract made by plaintiffs with Levering & Price, on the 11th of May, then there is no sufficient legal evidence in this case to entitle the plaintiffs to recover, and their verdict must be for the defendant.

The Court (STEWART, J.,) granted the plaintiffs' prayers, and granted the first, second, third, fourth, and fifth prayers of the defendant, the fourth prayer being conceded, and rejected his sixth prayer.

The defendant excepted specially as follows to the granting of the plaintiffs' prayer No. $1\frac{1}{2}$:

The defendant excepts specially to the prayer of the plaintiff numbered one and a half ($1\frac{1}{2}$) in which it is left to the jury to find, that by a general and uniform usage in the peach packing trade, the time for delivery would be the same as the time that the jury may find had been verbally agreed upon; because there is no evidence legally sufficient to establish the existence of such general and uniform usage as is mentioned in said prayer.

And the defendant specially excepted as follows to the granting by the Court of the prayers of the plaintiffs, and each of them:

There is no evidence legally sufficient to show, that the memorandum dated 12th of May, 1881, offered in evidence, contains the terms of the alleged verbal agreement between the plaintiffs and the witness, Waidner.

To the granting of the prayers of the plaintiffs, and to the refusal to grant the sixth prayer of the defendant,. the defendant excepted.

The jury rendered a verdict for the plaintiffs, and judgment was entered accordingly. The defendant appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*Charles Marshall,* for the appellant.

The plaintiffs' prayer, marked No. 1½, assumes that a memorandum may be sufficient to satisfy the 17th section of the Statute of Frauds, although it omits one of the terms of the verbal agreement, provided custom would fix that term as part of the contract in a case where the verbal agreement is silent.

It is of course admitted that a memorandum may be sufficient to satisfy the Statute which does not contain a term of the contract as to which the parties have made no agreement, but have left it to be regulated by custom. *Williams, &c. vs. Woods, Bridges & Co.,* 16 *Md.,* 251.

But it is submitted, that when the verbal contract leaves. no term to be regulated by custom, but *defines* every term, none of the agreed terms can be omitted from the memorandum. *Salmon Falls Manu. Co. vs. Goddard,* 14 *Howard,* 454; *Davis vs. Shields,* 26 *Wendell,* 341 ; *Morton, et al. vs. Dean,* 13 *Metcalf,* 388; *Soles vs. Hickman,* 20 *Penn. State,* 180 ; *Buck vs. Picknell,* 27 *Vermont,* 167; *Boardman vs. Spooner, et al.,* 13 *Allen,* 353; *Coddington, et al. vs. Goddard,* 16 *Gray,* 436.

[Argument on other points omitted. REP.]

*Albert Ritchie,* and *John Carson,* for the appellees.

Even if any given condition be verbally agreed upon,. its omission will not affect the sufficiency of the memorandum, if, in its absence from the memorandum, the

usage of trade establishes the same condition in the performance of the contract which had been verbally agreed upon.   *Williams, &c. vs. Woods, Bridges & Co.*, 16 *Md.*, 220–254 ; *Salmon Falls Manu. Co. vs. Goddard*, 14 *How.*, 446–454.

Further, it is sufficient if the memorandum substantially agrees with the parol bargain.   *Drury, et al. vs. Young*, 58 *Md.*, 546–555 ; *Sarl, et al. vs. Bourdillon*, 1 *C. B. N. S.*, 188, (87 *Eng. C. L.*)

If it contains "the essential terms," (14 *How.* 454, *supra*,) and if no time of delivery be agreed upon, the law will supply the omission.   (*Ib.*, 455.)   Or if terms of payment be agreed upon and omitted, the memorandum is still sufficient if the terms agreed on were such, as, in the absence of any in the memorandum, the law would imply.   1 *Benjamin on Sales*, (*4th Am. Ed.*,) 277–8 ; *Williams vs. Robinson*, 73 *Maine*, 186–195.

[Argument on other points omitted.   Rep.]

Stone, J., delivered the opinion of the Court.

Waidner & Co., as agents for Kriete, the appellant, sold to Myer & Co., the appellees, a quantity of canned fruit. The following is the memorandum of sale :

"Baltimore, *May 12th*, 1882.

"Sold to Mess. T. J. Myer & Co. for account of E. W. Kriete, (1000) one thousand cans 3 lbs. *Standard* Peaches, half yellow, next season's packing, at 1.80 per doz., 60 days, or less 1½ per cent. off for cash from date of delivery; said peaches to be fully equal to his last season's packing.
"(Signed,)      H. A. Waidner & Co."

Kriete refused to deliver the goods, and upon suit brought against him, set up the following as his principal defence to the action :

That the written note or memorandum of the sale differed from the parol contract in this: that the parol agree-

ment fixed a special date, (Oct. 5th, 1881,) on or before which the goods were to be delivered, and that the written note or memorandum, having omitted such special date, was faulty, and that no recovery could be therefore had upon it. ˙ This is the contention of the appellant.

On the other hand the appellees insist that no time for the delivery of the goods was specified or mentioned in the parol agreement, and none mentioned in the note or memorandum, and that the memorandum of the sale is amply sufficient to gratify the requirements of the Statute of Frauds.

It was conceded in the argument of this case, that, if the written note required by the Statute, contained all the substantial agreement made by parol, the note or memorandum was a sufficient agreement. But whether it is conceded or not such is clearly the law:

It is not necessary to the validity of such an agreement that the *time of the delivery* should be stated. If no time is stated for the delivery of the goods sold, then the law will imply that it is the duty of the seller to deliver them in a *reasonable time;* and what is a reasonable time must depend upon the circumstances surrounding the case, and the nature of the article dealt in. Or if there is an established custom among merchants who deal in the particular goods sold, regulating the time of such delivery, the delivery will be controlled and regulated by such custom. 2 *Benjamin on Sales,* 891; *Williams, &c. vs. Woods, Bridges & Co.,* 16 *Md.,* 220; *Salmon Falls Manu. Co. vs. Goddard,* 14 *Howard,* 446.

We have then in the note or memorandum before us, all the stipulations necessary for a complete contract of sale, and which would certainly be sufficient to entitle the appellees to recover on, provided that the note or memorandum omitted no stipulation contained in the verbal agreement of the bargain itself. The memorandum required by the Statute not being in itself the sale,

but only a memorandum of it. In addition to the written memorandum, the appellees offered the evidence both of Waidner and Shryver, who made the verbal agreement, that nothing whatever was said in such agreement about the time of delivery, and which evidence tended to prove that there was no variance between the verbal bargain and the written note thereof.

But the appellant having offered evidence tending, as he claims, to show that there was a stipulation in the parol agreement for a special time for the delivery of the goods, to wit: on or before the 5th of October, 1881, or in the months of August or September, 1881, and that such stipulation not being in the written memorandum, asked the Court to instruct the jury that if they found such to be the fact, the appellees could not recover. This instruction the Court gave, and in giving it, the Court gave the appellant the benefit of all the law that he asked for in this branch of his case, and all that he was entitled to.

The first three prayers of the defendant each present this question of fact to be decided by the jury, and the Court told the jury most emphatically and in various forms of expression, that if they did find that in the verbal agreement on or before the 5th of October, 1881, or in August or September, 1881, was the time fixed for delivery, that then the appellees were not entitled to recover, as that date was not included in the written memorandum. This was the whole contention of the appellant, and the jury could not possibly mistake the instructions of the Court on that point granted at the request of the appellant.

The Court granted every instruction asked for by the appellant except the sixth, and it very properly refused that, if for no other reason than that a part of it was inapplicable and misleading. That prayer in its opening asked the Court to instruct the jury that there was no evidence

in the case of any contract enforceable *against the plaintiffs.* The question at issue, and which was being tried in that case, was whether there was a contract enforceable *against the defendant.* It may be true enough, as an abstract proposition, that a contract enforceable against one of two parties, is enforceable against the other, but Courts are not required to announce abstractions, or to give any instruction that does not apply *directly* to the case before it. Besides this the residue of the prayer was covered by the instructions already granted, and the appellant has therefore nothing to complain of as to *his* prayers.

The first and second prayers of the plaintiffs which were granted, correctly enunciate the law of the case upon the theory of the plaintiffs. Taken together, these prayers instructed the jury that if they found that Waidner was the duly authorized agent of the appellant, and did as such agent sell the goods to the appellees, and that the written memorandum did contain substantially all the terms of the sale, and that the appellees were always ready to receive and pay for the goods, that then the appellees were entitled to recover; and upon the point of delivery, that if the jury found that there was a general and uniform usage in the fruit packing trade, fixing the time for the delivery of such goods, it was the duty of the appellant to deliver them in conformity to such uniform usage; but if the jury found there was no such usage, then it was the duty of the appellant to deliver the same in a reasonable time, such reasonable time to be determined from the circumstances of the case.

From what we have heretofore said, these instructions were correct, and there was evidence legally sufficient to go to the jury to prove a custom in the fruit packing trade.

The prayer of the plaintiffs marked one and a half should not however have been granted. That prayer instructed

the jury that if they found that the verbal agreement did fix a time for delivery, that if that time was the same time fixed by the general and uniform usage in the trade of such goods, that then it was immaterial whether such time was specified in the written memorandum or not.

This was an error. It was not necessary, as we have already said, that any time of delivery should be mentioned in the written memorandum, provided no verbal agreement was made as to delivery, as in such case the law would fix the time. But if a time was fixed in the bargain itself, it must be incorporated in the note. 1 *Benjamin on Sales*, 277.

But it has been repeatedly held by this Court that not only must an instruction be erroneous, but that the appellant must be prejudiced thereby before it can be made the ground of reversal. The cases of *Young vs. Mertens*, 27 *Md.*, 114, and *Parker vs. Wallis*, 60 *Md.*, 15, are among a number of cases on this point.

Taking all the instructions granted, and all the evidence in the case before us, we cannot perceive that the verdict of the jury could have in any wise depended upon, or was influenced by the erroneous instruction. The instructions asked for by the appellant, and which were granted and conceded, gave him in very specific terms, all the law that could possibly apply to the facts in the case upon which he relied, and had offered any evidence even tending to prove. The only evidence whatever offered by the appellant, and which he claimed was legally sufficient, went to prove that by the verbal agreement, *either* on or before the 5th of October, 1881, *or* during August or September, 1881, was the time fixed for delivery. He made no pretence that any other except one of these two periods was the one fixed on verbally, and the Court told the jury very plainly that if they found that either of these periods had been fixed in the verbal bargain that the *appellees could not recover, and their verdict must be for appellant.* The prayer marked one and a half does in some measure

modify the instruction that applies to one of these periods, but not the other, and the one period not touched or modified is the one principally relied on by appellant in his evidence and argument.

But a stronger reason still exists why we should not reverse this case on account of the error in this instruction. Waidner and Shryver who made the parol bargain, both depose positively *that no time for delivery was agreed upon between them.* The evidence offered on the part of the appellant to disprove this was of so slight and attenuated a character, that it is very doubtful whether it was legally sufficient for the purpose for which it was offered. No objection, however, was made to it on that score, and it went to the jury. But it is a very strong circumstance to be weighed by us in determining the question whether the appellant was really injured by an erroneous instruction, or by want of evidence. The other questions in the case arise on the admissibility of evidence. In the first exception Shryver, a witness produced by appellees, testified on *cross-examination* by appellant, that when in a former trial he referred to a purchase he had made through Levering in the Levering contract, as he termed it, and stated that the purchase of the goods in question in this case, was made on the same terms that he made with Levering, *he meant only the same price and credit, and so explained when he there testified.* The appellant then offered a paper, and proposed to ask the witness if that was not the Levering contract referred to; but the Court refused to allow the paper to be read to the jury or the question to be asked.

The only object that the appellant could have in producing the paper and asking the question, was to lay the foundation for showing that the witness did testify differently in a former trial from what he then said he did. It is well settled that before you can confront a witness with previous declarations, whether made under oath or not, for the purpose of contradicting or impeaching him, his

Kriete *vs.* Myer & Co.

attention must be called to what it is alleged, that he has previously said or sworn to, that he may have the opportunity of an explanation. Unless the party examining the witness does give him such opportunity for explanation, he loses his right to contradict him by such antecedent declarations. In view of this, it is difficult to see upon what ground the Court below excluded either the paper or the question, as the only ground of their admissibility was for the purpose of contradicting the witness by other statements. But the error was cured by a subsequent admission, without objection, as it appears, of the other and contradictory statements of the witness. The appellant by the subsequent evidence so introduced derived all the benefit that he could have gotten if the paper had been previously read and the question asked. So that the appellant was not injured by the ruling.

In the appellant's second exception the Court below refused to allow the appellant to ask a witness on the cross-examination, whether one of the provisions in the contract of sale in this case (the quality of the peaches) was not one of the provisions of another contract dated the 11th of May? In so ruling, the Court below committed no error.

The fact whether there was in *another and different contract* one of the same provisions found in the contract, which was the subject of this suit, was a fact totally collateral and irrelevant to the issue then being tried. It could only have been asked for the purpose of contradicting the witness on that point by other testimony. In such a case the rule is thus laid down by Mr. *Greenleaf:* "A witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue merely for the purpose of contradicting him by other evidence." 1 *Greenleaf on Evidence,* (14th *Ed.*,) sec. 449.

The judgment will be affirmed.

*Judgment affirmed.*