# GEORGE SCHLOSSNAGLE *vs.* J. GEORGE KOLB.

*Trespass q. c. f.—Constructive Possession of Unoccupied Land by Right-ful Owner—Color of Title—Adverse Possession.*

A mere right of entry, without possession, will not support an action of trespass *quare clausum fregit*, the gist of which is injury to the possession, but when the land is unoccupied the party who has the true legal title thereto is constructively in possession and may maintain the action against one who has merely color of title and who had previously been in possession of part of the land but whose possession had ceased.

The possession of part of a tract of land by the rightful owner is constructive possession of the whole tract as against a person in possession of a part and claiming title to the whole by an invalid deed, except as to the part actually occupied by the intruder.

When a person having mere color of title to land leases a part of the same to parties who afterwards accept leases from the rightful owner, acknowledging his title, the running of the Statute of Limitations is arrested by such entry and new leases, and possession is restored to the true owner.

Appeal from the Circuit Court for Garrett County (BOYD, C. J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PEARCE, SCHMUCKER and JONES, JJ.

*R. T. Semmes,* for the appellant.

*Edward H. Sincell* (with whom was *Norman S. Heindel* on the brief), for the appellee.

JONES, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for Garrett County in a case of trespass *quare clausum fregit.* The action was instituted in that Court by the appellee against the appellant for an alleged trespass upon a tract of land called" Friedland," the title to, and possession of which the appellee claimed to be in him. The appellant took defense on warrant; and the evidence in connection with the return made under the warrant,

shows little or no dispute about the facts which must control the decision of the case. At the conclusion of the testimony the appellant asked of the Court two instructions that related to the right of recovery against him. These having been rejected by the trial Court he excepted. The exception thus taken presents the only question which the record brings up.

It appears from the proofs that in 1840 a patent issued from the State of Maryland to George Templeman and David Stewart for the tract of land "Friedland" to which the controversy here relates. In regular course of devolution through sundry mesne conveyances the paper title to this land became vested in the appellee. It was conveyed to him by deed dated the 30th day of March, 1896, from Margaret Sturgis and Russell Sturgis her husband, which was duly recorded, and under which it appears, he immediately went into possession. The *locus in quo* of the trespass alleged is embraced within the lines of the patent for "Friedland;" and of the appellee's deed. "Friedland," as patented, contained two hundred and one-fourth acres of land. There were no enclosures around the tract and none of the parties through whom the title passed in course of devolution to the appellee ever lived upon or actually occupied, in person, any part of the same; but the land had been duly assessed to the parties under whom the appellee claims, and the taxes thereon were paid by them before, and by him since, he bought it. In 1874 John W. Fike obtained a patent from the State for a tract of land by the name of "Fike's Venture," which consisted of three hundred and sixteen acres, and together with other land, embraced within its lines all of the land covered by the patent for "Friedland." In 1871 Christian Fike, father of John W. Fike, had obtained a warrant from the Land Office and upon this a certificate of survey, locating "Fike's Venture," but did not get out a patent. This location was identical with the location of the same land in the patent issued to John W. Fike in 1874 except that this patent along its eastern boundary, which was identical with the eastern boundary of "Friedland," included a strip of land not embraced within the lines of the location made in the cer-

tificate of survey of 1871.   Christian Fike entered upon this land and built a house and erected a sawmill on Bear Creek, as shown upon the plats.   He died before obtaining a patent and by his will, dated in 1872 and probated in 1873, he devised to his son, John W. Fike, "a certain tract of land lying on Bear Creek formerly vacant but recently known as my (his) sawmill property, containing one hundred and fifty acres more or less."   The buildings erected by Christian Fike were within the lines of the patent for "Fike's Venture" subsequently obtained by John W. Fike and of the certificate of survey made prior thereto for his father; but neither the buildings, nor any enclosures in connection with them were within the lines of "Friedland."

It was in evidence that in 1876, John W. Fike gave to the appellant a paper under which the latter claims to have entered into possession of land described in a deed subsequently executed to him by Fike on the 3rd day of January, 1878. This deed embraced within its outlines that part of "Fike's Venture" upon which the sawmill and house had been built, and also, besides other land within the patent for "Fike's Venture," all that part of the tract of land covered by the patent for "Friedland," which lay within the lines of the certificate of survey made in 1871 for Christian Fike.   It contained, however, an exception from the grant as follows : "excepting * * eighty acres heretofore sold to Catherine Geiss, also thirty-one acres and 132 perches sold to Michael Harden." The land referred to as sold to Catherine Geiss is described in a deed to her from A. J. Fike administrator of John W. Fike which is dated on the 4th day of December, 1884, and was recorded on the 21st of February, 1885.   This deed, with other land, includes a small part of " Friedland," and recites that a deed was executed to Catherine Geiss on the third day of January, 1878, by John W. Fike for the land therein described ; but that through negligence this last-named deed was never delivered to her and was never recorded.   It does not appear just when her occupancy or possession began ; but she and her husband, William Geiss, were on the 17th day of

December, 1884, in occupancy of a part of the land described in her deed which lay within the bounds of " Friedland." The land referred to as sold to Michael Harden is described in a deed to him from John W. Fike bearing date January 3rd, 1878, but not recorded until November 10th, 1892, and lies wholly within the lines of " Friedland." In December, 1884, he had cleared and was in occupancy of a part of this land.

In addition to the enclosures of parts of " Friedland " in the occupancy of Geiss and Harden there was one by Henry Kolb which covered a part of " Friedland " that lay within the lines of the appellant's deed and also a part of the strip of land on the eastern boundary of that tract which was not included in the bounds of said deed. Kolb had no paper title, and how he first came into occupancy of the land does not appear in the evidence. He testified that in 1876 the appellant came to him with two men who, he (appellant) told him were owners of the land and wanted to sell it to him (Kolb); and proposed that he and appellant should buy it in partnership ; that after this he (Kolb) was in possession of part of the land and cleared it himself; that he " held it under somebody—Stewart was one of them ; " that " he found it out from the Land Office ; " that he " never entered the land under any agreement " with Fike and " never made any agreement with Fike in reference to the timber ; " that " later he cleared about an acre ; " and that he " began clearing in 1858 and kept on until Fike ran off the land."

With the exception of the improvements and enclosures which have been noticed all the land patented as " Fike's Venture " was wild, uncultivated and uninclosed. There was testimony on behalf of the appellant that he and his grantor had cut timber on the land, " Fike's Venture ; " had pastured it ; had made sugar from sugar trees on it ; and had kept off trespassers. Some of these acts were done upon "Friedland," but do not appear to have had special reference to assertion of title to or possession of, that tract as distinct from " Fike's Venture," or as a distinct part thereof ; but to have been done indiscriminately as respects the two tracts. Land by the

name of " Fike's Venture " was assessed to the appellant's grantor and taxes were paid accordingly by both the appellant and his grantor.

In December, 1884, an agent of the appellee's grantors went upon the land " Friedland " and in assertion of their title and right to the same leased to William Geiss and Michael Harden the parts of the tract then enclosed and occupied by them respectively.   Geiss and Harden both recognized the title thus asserted and executed with the agent leases for one year each under seal.   Each lease expressed that it was made on behalf of Russell Sturgis, Jr., and Margaret Sturgis, his wife, as lessors " for that portion of the tract of land known as ' Friedland ' situated in Garrett County, State of Maryland, now enclosed and occupied by him "—being in the one case Geiss and in the other Harden.   In like manner in May, 1895, the same agent leased on behalf of the appellee's grantors to Henry Kolb " that portion of the tract of land known as ' Friedland,' * * * and which the said Kolb has had under fence." This lease was for one year from May 1st, 1895, and was current at the date of the appellee's deed.

Upon this state of facts the appellant by the prayers set out in his exception asked the Court to say as matter of law "that there is no sufficient evidence in this case of possession in the plaintiffs as to enable them to recover in this action ; " and further that if the Court (sitting without a jury) should find that the appellant " entered into possession of that part of the tract called ' Fike's Venture ' described in the deed to him * * * and hath continued in the possession thereof from that time until the beginning of this suit and by actually occupying with a mill and other out-buildings a portion of said land and claimed title to the extent of the outlines of his deed * * * by cutting timber thereon for the use of his mill, paying taxes thereon and pasturing the same and keeping off trespassers and if they further find the acts of trespass complained of to have been committed * * * within the lines of a tract of land called ' Fike's Venture ' as described and held under said deed " then the plaintiffs were not entitled to re-

cover and further asked the Court to say " that the lease
*   *   *. to Michael Harden and that to William Geiss, and
that to Henry Kolb cannot have the effect of placing the
grantors of the said leases in possession of any part of the tract
called 'Friedland' which is not described in said several leases,
and if they further find that the only act of entry by the plain-
tiff consisted of the recording of his deed and the forcible
. occupation of the land on which the trespass is claimed to have
been committed, then the plaintiff is not entitled to recover
*   *   *   provided that they shall find that George Schloss-
nagle (appellant), was in actual occupancy of the premises at
the time the plaintiff's deed was recorded, under the deed to
him as aforesaid."

Without stopping to inquire whether or not these prayers
as framed may or may not be faulty in other respects and
looking only to the legal propositions they were intended to
assert they were properly refused upon the state of evidence
in this case. The theory upon which they are based is that
there was, by the appellant and his grantor, a complete dis-
seisin and ouster of possession of those claiming title under
the patent to "Friedland" as to that tract ; and that such dis-
seisin continued down to the time of the committing of the
trespass here complained of, and of the bringing of this suit,
by reason of which the appellee had, at best, at the time of
suit brought, but a mere right of entry which will not support
an action of trespass. Injury to the possession is the gist of
the action of trespass ; and to support such action the plaintiff
must show possession of the *locus in quo,* but this does not
mean that he must be in actual occupancy thereof. A valid
title to the *locus in quo* draws to it the possession ; and upon
the possession which the law so implies the action will lie
though the *locus* of the trespass be in a wild and unoccupied
state. *Gent.* v. *Lynch,* 23 Md. 58–65; *Hoye* v. *Swan's Lessee,*
5. Md. 237 and cases there cited. In this case those claiming
title under the patent of 1840 show a clear paper and record
title, by their *prima facie* proof, to "Friedland." There is no
dispute or question about this. Down to 1874 when John W.

Fike obtained the patent for "Fike's Venture," they had by intendment of law the possession of all the land covered by the patent of 1840. How far those holding title to "Friedland" were affected in their possession of that tract, if they were affected at all, by the certificate of survey of 1871 to Christian Fike, and what was done under it and in connection therewith, is not a material inquiry in this case as will appear from the expression of views which follows.

The propositions involved in the contention of the appellant find their strongest support in the claim made that, by virtue of the patent of 1874, his grantor, having had possession of a part of the land described therein, and making claim to the whole, had color of title thereto, and as a consequence, by intendment of law, possession of the whole ; and that for like reasons under the deed of January 3rd, 1878, he had, at the time of the trespass committed, possession of all that part of "Friedland" which is embraced within the boundaries of his deed, and of the *locus* of the trespass to the exclusion of the rightful owners therefrom. It is settled law, with some qualifications that the facts of this case do not require us to have reference to, that if a party makes entry upon and goes into possession of a part of a tract of land with color of title to the whole, claiming title to the whole, he is, in law, in possession, constructively, to the extent of the bounds of his title. *Hoye* v. *Swan's Lessee*, 5 Md. 237; *Parker* v. *Wallis*, 60 Md. 15. Now giving the appellant the benefit of the principle of law just adverted to and assuming that he went into possession of the land, embracing the *locus in quo*, under his deed of 1878, as set out in the prayers under consideration, the question recurs did such possession continue to the time of the trespass committed ? When in 1884 the grantors of the appellee entered peaceably upon the land in controversy in assertion of their title thereto, and made the leases to Geiss and Harden, who, in acknowledgment of the right of the said grantors to the possession, executed to them the leases, the possession of the parts of the land so leased undoubtedly reverted to these rightful owners. At this time limitations was no bar to their

entry; and possession of the parts in question was peaceably delivered to them. That they did come into rightful possession of the parts of the land so leased is admitted by the appellant. This is a part of the hypothesis of one of his prayers. With then, the rightful owners of the land in rightful and peaceable possession of a part thereof it would seem that in reason the law would, by its intendment, put the possession of the whole in these rightful owners rather than in one in possession of a part and claiming title to the whole by a mere color of title.

The reasoning of the Court in the case of *Hall* v. *Powell*, 4 Seargent & Rawle (Pa.), 456, may be applied here. The Court there said : " There would appear to be no clearer principle of reason and justice than this, that if the rightful owner is in the actual occupancy of a part of a tract by himself or a tenant he is in the constructive and legal possession and seisin of the whole, unless he is disseised by actual occupation and dispossession. If this were not the law the possessor by wrong would be more favored than the rightful possessor. Here are two, each in actual possession and occupation of part of a surveyed tract, the owner and an intruder. Who is in possession of the part not occupied by enclosure by either—the man who has no right, but by disseisin, of a part or he who is in the actual occupancy of a part and the rightful owner of the whole? In this kind of mixed constructive possession the legal seisin is according to the title. Title draws possession to the owner." More pointed still in its application here is the following from 3 *Wash. on Real Property*, sec. 1986. " The seisin of an owner of an unbroken tract, who is in the actual occupation thereof, cannot be taken from him further than the actual adverse possession extends. Consequently as against the owner in occupation adverse possession under color of title is of no avail as a foundation of title. This is true even if the owner go into occupation of a part of his land after the disseisin has commenced. The running of the statute will thereby be stopped as to so much of the land as was constructively possessed and will be restricted to that in actual

possession." In support of the text the author refers to case of *Hunnicutt* v. *Peyton*, 102 U. S. 333, which sustains the doctrine laid down and in its facts, as bearing upon the point under consideration, is closely analogous to the case at bar. See also case of *Lessee of Clarke et al.* v. *Courtney et al.*, 5 Peters, 319. Again in *Cooley on Torts*, marg. p. 323. it is said : " But if one lawfully entitled to possession can make peaceable entry even while another is in occupation, the entry, in contemplation of law, restores to him complete possession, and it is not unlawful for him to resort to such means, short of the employment of force, as will render further occupation by the other impracticable."

Upon authority, therefore, as well as in reason it seems to be clear that the entry, in 1884, of the appellee's grantors upon the land in controversy and making the leases to Geiss and Harden by which, these latter were put into possession as tenants of the former under the circumstances already indicated, arrested the running of limitations and restored the possession of " Friedland " containing the *locus in quo* to the rightful owners thereof. In the case of *Henderson and wife* v. *Griffin*, 5 Peters, 151–158, it is said: " It is settled law that an entry on the land by one having the right has the same effect in arresting the progress of the limitation as a suit."

So far we have left out of consideration, as to its effect upon the propositions of the appellant's prayers, the lease to Henry Kolb of May, 1895. Applying to the facts in connection with that the principles of law already adverted to, these propositions become manifestly unsound. It will be observed that the appellant's prayers start his adverse possession with the date of his deed, January, 1878, and claim that as twenty years intervened between that date and the bringing of this suit in 1899, the bar of limitations applies. Kolb was in possession and occupancy by enclosures of a part of "Friedland" at the date of the appellant's deed. His occupancy took in a part of the land within the lines of this deed and also part of the outlying strip of " Fike's Venture ; " as it was of " Friedland," not included in the deed. He did not hold under Fike,

appellant's grantor, nor under the appellant. He did not hold adversely to the legal owners, but in recognition of their title; and in May, 1895, before expiration of twenty years counting from the date of appellant's deed he accepted a lease from the grantors of the appellee of the land in his occupancy and was put into possession thereof as their tenant. This under the law, as we have found it to be, put these grantors into possession of all that part of the land included in the deed of the appellant to which they had the paper title. Thus at the date of the deed of 1896 to the appellee his grantors had and transferred to him both the title to and the possession of the *locus in quo*.

Finding no error in the ruling of the trial Court in its rejection of the prayers set out in the appellant's exception the judgment of that Court will be affirmed.

*Judgment affirmed with costs to the appellee.*

(Decided May 8th, 1903.)