# STRATHMORE COAL MINING COMPANY

## vs.

## BAYARD COAL AND COKE COMPANY.

*Mining Lease—Default by Lessee—Ejectment on Forfeiture—Damages for Retaining Possession.*

In ejectment by the lessor of a coal mine against the assignee of the lease, on account of a breach of conditions therein, *held* that the evidence of defendant's default in the payment of the stipulated royalties, and in its failure to furnish statements by the railroad company as to amounts shipped from the mine, was sufficient to go to the jury.                  p. 370

That an officer of defendant, by mixing the coal taken from the leased mine with coal from another mine, rendered it impossible to obtain the statements from the railroad company, did not release defendant from its obligation to furnish such statements.                  p. 369

Since plaintiff in ejectment cannot recover in another suit damages which he has claimed but failed to recover in the ejectment suit, his right to recover, in ejectment cases, for damage suffered as a result of the ejectment from and detention of the premises should be coextensive with his right to recover in trespass cases.                  p. 371

Since Code, art. 75, sec. 92, fixing the measure of damages for the wrongful working and abstracting of another's minerals, does not apply, by its terms, when such wrongful working and abstraction are the result of negligence, the measure of damages in such case is that which existed prior to the passage of the statute,—that is, the value of the coal when first severed and before it was placed upon the mine cars, without deducting the expense of its severance.                  p. 372

In ejectment by the lessor of a coal mine against the assignee of the lease, based on a forfeiture clause authorizing the lessor, after thirty days' notice of intention so to do, to declare the lease terminated by reason of a default in the performance of

its stipulations, *held* that it was proper to instruct the jury that if defendant remained in possession, negligently disregarding the fact that the lease had terminated, the measure of damages was the value of coal mined and carried away by defendant after thirty days from receipt of the notice to quit, up to the day of trial, estimated by finding its selling price at the surface, and deducting the cost of bringing it from the place where it was dug, or by finding its worth before its removal from such place after its severance from the freehold.                                                   p. 370

The measure of damages for the negligent taking of coal from another's mine being the value of the coal when first severed from the freehold, one seeking to recover for such taking has the burden of showing that value, and can do this by introducing evidence of its value upon the surface, less the cost of removal thereto from the place of severance.        p. 373

Evidence as to the value upon the surface of coal taken by defendant from plaintiff's mine *held* too vague and indefinite to show such value, as a basis for ascertaining its value at the place of severance.                                  p. 373

The withholding of leased property from the lessor, by an assignee of the lease, *held,* under the facts and circumstances of the case, to be evidence tending to show that such assignee remained in possession negligently after the alleged termination of the lease by reason of a default thereunder.        p. 374

The Court of Appeals approving the decision of the lower court in favor of the appellee's right to recover in ejectment the coal and mining rights appurtenant thereto, and disapproving its decision in his favor as to damages, *held* that it was proper, under Code, art. 5, sec. 22A, to affirm the judgment in the former respect, while reversing it in the latter.        p. 375

*Decided June 29th, 1921.*

*Judgment modified December 2nd, 1921.*

Appeal from the Circuit Court for Garrett County (WAG-AMAN, J.).

The cause was argued before BOYD, C. J., THOMAS, PATTISON, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

Ejectment by the Bayard Coal and Coke Company against the Strathmore Coal Mining Company and others. From a judgment for plaintiff said defendant company appeals. Reversed in part.

The plaintiff's fifth prayer was as follows:

The plaintiff, by its counsel, prays the court to rule as a matter of law that, if it shall find the plaintiff had a right to re-enter the land described in the declaration because of a default, but that the Strathmore Coal Mining Company thereafter remained in possession, negligently disregarding the fact that the lease had terminated, if the court shall so find, then the measure of damages is the value of all coal mined and carried away by such defendant after the expiration of 30 days from the defendants' receipt of the notice to quit, up to and until the day of trial, estimated either by finding the price at which it would sell when brought up to the surface, and deducting the mere costs of bringing it there from the place where it was dug, or by finding its worth before it was removed from the place where it was dug, after it had been severed from the freehold.

The court's statement of the law of the case, referred to in the opinion, was as follows:

The court rules, as a matter of law, that if it finds from the evidence that the defendant, Strathmore Coal Mining Company, was in possession of the land described in the declaration by virtue of an assignment of the lease from the plaintiff offered in evidence, and further finds that the plaintiff brought an action of ejectment in the District Court of the United States for the District of Maryland against said defendant for the recovery of the land mentioned in the declaration, and that said suit was based on alleged violations of the covenants of the said lease, and resulted in a verdict

for the defendant in December, 1917, and that in the trial of said suit evidence was offered by the plaintiff tending to show alleged breaches by the defendant of the covenants of said lease, then the plaintiff is precluded from setting up in this case any breaches of the covenants of said lease occurring prior to said case, and further rules that no evidence tending to show any acts of waiver by the plaintiff prior to said case is available in support of a defense by the said defendant in this case.

And if the court finds the aforegoing facts and further finds that said plaintiff on or about the 31st day of August, 1918, sent to the said defendant the notice to quit offered in evidence and the same was received by the said defendant, and further finds that the said defendant dug and mined coal from the plaintiff's said property during the months of January, February, March, April, May, June, July and August, 1918, and further finds that the said defendant failed to pay or to offer to pay the rent or royalty of five cents per ton for said coal dug and mined during the months of March, April and May, 1918, on or before the 25th day of the month succeeding that in which the coal was mined and dug (hereinafter for convenience called breach No. 1), and further finds that the said defendant failed to exhibit to the plaintiff for each of the months of January, February, March, April and May, 1918, on or before the 25th day of each succeeding month, a copy of a statement of the agent of the railroad company transporting the coal, showing the number of pounds of coal shipped and taken from the said land for any of said months (hereinafter for convenience called breach No. 2), and further finds that said defendant, on or before the defendant received the notice to quit aforesaid, did not furnish to the plaintiff any statement of the coal dug and mined on said land for the months of March, April and May, 1918, nor any blueprint or maps or other information from which the amount of coal dug and mined during said last mentioned months

could be ascertained by the plaintiff, and that said amount of coal was unknown by the plaintiff, and that for the months of January, February, March, April and May, 1918, the said defendant caused to be mixed in the railroad cars the coal taken from the plaintiff's land and that taken from the lands of others, so that no copy of a statement of the agent of the railroad transporting said coal, showing the amount of coal taken from said plaintiff's land could then or at any time thereafter be had, then the court rules as matter of law that the plaintiff was not required to demand payment of the rent or royalty before declaring a forfeiture of said lease (even if under a proper construction of said lease such demand were necessary except for said conduct of the defendant, but the court does not rule that such would be a proper construction of said lease); and rules further as matter of law that the said breach No. 2 cannot be compensated by money damages, and if in addition to the aforegoing facts the court further finds that no offer to pay rent or royalty for the months of March, April and May, 1918, was made by the said defendant prior to October 28, 1918, and further finds that after said notice to quit the defendant remained in possession of said lands for more than thirty days, and prevented the plaintiff from taking possession of the same, then the plaintiff is entitled to recover; unless the court further finds that subsequent to the breaches No. 1 and No. 2 aforesaid, the defendant paid and the plaintiff received the rent or royalty accruing subsequent to said breaches, or unless the court further finds that the plaintiff's course of conduct with the said defendant after December, 1917, was such as to lead a reasonable person to believe that the plaintiff has dispensed with its right to declare a forfeiture of said lease, and that the said defendant, relying upon such belief, expended considerable sums of money in the development of said property prior to the notice to quit aforesaid, which sums would be lost to the said defendant on a recovery by the plaintiff.

Or unless the court further finds that said breaches No. 1 and No. 2 were not willful, inexcusable or because of culpable negligence on the part of the said defendant.

*Albert A. Doub* and *Ernest Ray Jones,* for the appellant.

*Wm. Henry White* and *George Henderson,* with whom was *Asa T. Matthews* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered by the appellee, the Bayard Coal and Coke Company, a corporation, against the appellant, the Strathmore Coal Mining Company, likewise a corporation, in an action of ejectment brought by the former against the latter.

On the 9th day of December, 1915, the Bayard Coal and Coke Company leased and demised unto John W. Galloway and William A. Price, "their successors and assigns," all the merchantable coal in and upon all that certain piece, parcel or tract of land, situate, lying and being in District No. 8 in Garrett County, Maryland," consisting of a number of lots, therein fully described and particularly designated by numbers, "for the term of twenty years," commencing with the date of the execution of said lease, "with the privilege of renewal for a similar additional period, unless all the merchantable coal in the said tracts of land above described shall sooner be exhausted or taken therefrom," in which event the lease was to terminate.

The lessees, under the terms of said lease, were to pay to the lessor on or before the 25th of each month, "the rent or royalty of five cents for each and every ton of coal of 2,240 pounds weight mined, dug and carried away from said tracts of land above described, or consumed thereon, or manufactured thereon into other products."

In addition thereto, the lessees were to pay to the lessor *"one-half* of the taxes, national, state and local," which might "be laid, levied or assessed upon the tracts of land" described

in said lease after January the 1st, 1916, and *all* the taxes
upon the personal property, "when and as soon as the same
shall become due and payable," and the lessees were to ex-
hibit receipts therefor on the 1st day of January each and
every year during the continuance of the lease.

The lease further provided that

> "The said rents or royalty shall be ascertained as
> follows: On or before the 25th day of each month the
> said lessees shall exhibit to the said lessor a copy of
> the statement from the agent or agents of the railroad
> company transporting the coal a statement showing
> the number of pounds of coal shipped by said lessees
> during the preceding month, and taken from said
> lands above described, and if any of the said coal taken
> from the said lands is stored, sold or disposed of by
> the lessees at the mines, plant, tipple, or any other
> part or portion of the lessees' operation or elsewhere,
> and it is not shipped away by the lessees, or is con-
> sumed or manufactured on the said lands in the other
> products, or it is so that a record of the amount of
> coal mined by the lessees cannot be secured by the
> railroad company, then, each and every case, the les-
> sees shall furnish the lessor a statement of the coal
> so mined, giving the lessor complete information as to
> the quantity of coal so mined from the said lands
> during the previous month."

The lease contains the further provision that should the
lessees or their assigns default in the performance of any of
the stipulations, covenants or agreements therein, that were
to be performed by them or their assigns, and such default
continued for a period of three months,

> "the said lessor, its successors or assigns (having given
> thirty days' notice of its intention to do so, by a writ-
> ing signed by the lessor and directed to the lessees
> or their assigns), may, at its option, declare this lease
> or agreement terminated or ended, and the rights or
> privileges of the said lessees or their assigns hereun-

der shall be forfeited, and this lease or agreement, so far as it gives interest, right or privilege to the said lessors shall become null and void, and the lessor or its assigns may enter and take possession of the demised premises and all the improvements thereon, and remove the lessees and all persons, firms and corporations claiming under them."

The lessees took possession of the property rights acquired by them under the lease, but in about three months thereafter assigned the lease to the appellant corporation.

On the sixth day of June, 1918, the Bayard Coal and Coke Company passed the following resolution:

"Resolved, That D. A. Arnold, the vice-president of the company, be and he is hereby authorized to serve a new legal notice to quit upon Messrs. John W. Galloway, William A. Price and the Strathmore Coal Mining Company, for the reason that they had defaulted in the terms of the lease dated December 9th, 1915, and that the said D. A. Arnold and George S. Rees are further authorized to enter suit or take such proceedings as they may deem necessary to again obtain possession of the property covered by said lease."

Upon the authority of such resolution the following notice, dated as of August 31st, 1918, addressed to John W. Galloway, William A. Price and the Strathmore Coal Mining Company, was prepared and signed by the Bayard Coal and Coke Company, through its vice-president, D. A. Arnold:

"Gentlemen:

"Pursuant to a resolution passed by the board of directors of the Bayard Coal & Coke Company, a corporation organized under the laws of the State of West Virginia, at a regularly called meeting held at the office of the company at Keyser, West Virginia, on the 6th day of June, 1918, at which the entire members of the board were present, the undersigned was unanimously authorized, empowered and directed to give you the following notice:

"On behalf of the said Bayard Coal & Coke Company, I hereby give you thirty (30) days' notice, expiring thirty days from the date of the receipt of this notice, to quit and deliver up the possession the property conveyed to John W. Galloway and William A. Price under a certain lease, dated the 9th day of December, 1915, of certain lands in Garrett County, State of Maryland, in District No. 8, being more particularly described in said lease. You are also given a similar notice to deliver up all of the personal property now upon the premises.

"This notice to quit is given under the terms of the lease contained in the tenth and eleventh paragraphs thereon, for the reason that there has been default on the part of the lessees and their assigns in the performance of the stipulations, covenants and agreements contained in paragraphs four (4), five (5), six (6), seven (7), eight (8), ten (10) and twelve (12) of said lease.

"A certified copy of the resolution of the board of directors is attached hereto and marked Exhibit 'A' and asked to be made a part hereof.

"Bayard Coal & Coke Company,
"(S.)   D. A. Arnold,
"Vice-President."


The breaches referred to in said notice were: (1) The failure of the appellant to render monthly statements from the agents of the railroad company showing the number of pounds of coal shipped over its road by the lessees during each preceding month, as provided by Section 4; (2) its failure to pay the royalties as and at the times provided in the fifth paragraph; (3) its failure to work the mines as covenanted and stipulated in the sixth paragraph; (4) its failure to comply with the Federal and State laws regulating the working of mines and providing for the safety of persons employed therein; (5) its failure to provide maps as required by the eighth paragraph of the lease; (6) those relating to the appellee's

right of entry in case of default; (7) the appellant's failure to insure the property, as provided for in the 12th paragraph of the lease.

The lessee, it seems, failed and refused to comply with the direction contained in the notice of the lessor to it, but remained in possession of the leased premises, and was in possession of the same at the time this suit was instituted on the 15th day of November, 1919.

The case was tried by the court sitting as a jury, and its verdict was "for the plaintiff for the coal and mining rights appurtenant thereto, as claimed in the declaration, and $10,000 damages against the Strathmore Coal Mining Company; and for the defendants, William A. Price and John W. Galloway," who had been sued with the Strathmore Coal Mining Company.

In the trial of the case four exceptions were taken to the rulings of the court, one upon the prayers and the others to the court's rulings upon the admission of evidence.

The plaintiff asked for eight and the defendant for ten instructions. All the plaintiff's prayers as offered were rejected, though its fifth prayer, after modification by the court, was granted; and of the defendant's prayers only its fifth and twelfth were granted, the others were all refused. The court, however, granted an instruction called by it "the court's statement of the law of the case."

There were special exceptions filed to the court's instruction, as well as to the plaintiff's fifth prayer, as modified by the court. A motion was also made by the defendant at the conclusion of the evidence, to strike from the record the testimony (admitted subject to exceptions) of W. A. Price and Robert Stallings called as witnesses for the plaintiff, tending to prove the market and government prices of coal during the years 1918, 1919 and 1920.

The court refused to strike out this testimony, but from such ruling no separate exception was taken, which it seems, to say the least, should have been done, but the same was em-

braced in the exception to the rulings upon the prayers, in which exception the defendant excepted to the action of the court in granting the plaintiff's fifth prayer and in rejecting the defendant's 1st, 2nd, 3rd, 4th, 6th, 8th, 9th, 10th and 11th prayers, and in overruling defendant's special exceptions to the "court's statement of the law of the case," and to plaintiff's fifth prayer, and in adopting its own instructions.

The defendant's twelfth prayer directed a verdict for the defendants, William A. Price and John W. Galloway; and its fifth prayer withdrew from the consideration of the court, sitting as a jury, all alleged breaches "by reason of any failure on the part of the defendants, or either of them, to furnish maps or plats of the mines, or to pay the taxes on the property covered by the lease."

It appears from the record that a suit or action similar to the one here brought was instituted by the appellee against the appellants, in the United States District Court for the District of Maryland, to again acquire the property rights leased by it to the assignors of the defendant, and, as we understand, because of the default of the defendant therein, the appellant here, in not performing the stipulations and covenants contained in said lease, that were to be performed by it as assignee of Price and Galloway under the terms of said lease, and that such proceeding terminated adversely to the appellee here, and it was conceded, in the trial of this case in the court below, that by said decision the appellee was estopped in these proceedings from claiming any defaults occurring earlier than December, 1917.

The said notice, as it appears from the record, was served upon or received by the president of the Strathmore Coal Mining Company on September the 9th, 1918.

The first communication between the parties to this suit, so far as the record discloses, after the decision of the case in the United States District Court, was in the form of a letter dated the 7th day of February, 1918, from Samuel M. Llera, president of the Strathmore Coal Mining Company, to G. S.

Rees, treasurer of the Bayard Coal & Coke Company, Washington, D. C., offered through Rees, while upon the stand as a witness for the company. In this letter was enclosed a map of the mine, showing its condition when taken over by the Strathmore Coal Mining Company, and also a survey showing the operation of the mine in 1917, and in this letter the appellee company was asked to send to the appellant the amount of all taxes owing upon the leased property that were payable by it under the terms of the lease. A reply was made to this letter on February 20th, in which Rees asked for a complete map of the mines in accordance with the terms of the lease to Price and Galloway, but nothing was said in reply to Llera's request for information as to the amount of taxes owing by his company.

The next letter was from Llera to Rees, dated February 23rd, enclosing check for $57.35, royalty on 1,147 tons of coal mined in January. Rees acknowledged the receipt of the check by a letter dated February 28th, in which he said, "we wish you would look at section 4 of the lease which you claim title, and please send statement as required under the said section." The statement mentioned in said section, and the one to which the writer referred, was the one from the railroad company showing amount of coal shipped over its road for the time named in appellant's letter.

On March 28th, Llera wrote Rees enclosing him check for $62.04, of which amount $58.28 was for royalties for the month of February, and balance $3.76 on January operations, which was not included in former check, as the error in the amount owing for that month was discovered after the check had been sent therefor. In this letter, Llera gave the total number of tons mined, and with his letter enclosed two statements, one for each of the months of January and February, 1918, showing the amount, as claimed by his company shipped by the railroad—giving in separate columns, car number, initial of car, and number of tons—as well as the amount used

in production, but there still was no statement from the railroad company.

This was the last communication until October the 26th, 1918, when Llera delivered in person to Rees a letter of that date, which is as follows:

"Gentlemen:

"We hand you herewith monthly statements of coal mined by this company from the Strathmore Mine, which we hold under our lease with you, our property.

"Recapitulating the monthly statements which are furnished herewith, would state that the tonnage mined is as follows, including boiler tonnage:

| | |
|---|---:|
| January, 1,219.77 tons mined; royalty, 5c. per ton. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $60.98 |
| February, 1,162.55 tons mined; royalty, 5c. per ton. . . . . . . . . . . . . . . . . . . . . . . . . . . | 58.13 |
| March, 1,501.48 tons mined; royalty, 5c. per ton. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 75.07 |
| April, 778 tons mined; royalty, 5c. per ton. . | 38.90 |
| May, 1,016.03 tons mined; royalty, 5c. per ton. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 50.80 |
| June, 1,054.55 tons mined; royalty, 5c. per ton. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 53.23 |
| July, 852 tons mined; royalty, 5c. per ton. . | 42.60 |
| August, 933.50 tons mined; royalty, 5c. per ton. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 46.67 |
| September, 1,081.08 tons mined; royalty, 5c. per ton. . . . . . . . . . . . . . . . . . . . . . . . . . . | 54.09 |
| | $480.47 |
| "Less amount paid you Feb. 25, '18. . . . . . | 57.35 |
| | $423.12 |

"We find that you have not cashed our check No. 259, dated March 27th, for $62.04, nor have you cashed our check dated May 25th, 1918, amount of $114.45.

"We hereby tender you in United States currency the amount of four hundred twenty-three dollars twelve cents, $423.12, legal tender, in full of royalties due your company from this company to date.

"Yours very truly,

"Strathmore Coal Minnig Co.,

"Manuel M. Llera,

"President."

With the above letter were statements for the months named from January to September, both inclusive, giving the date of shipment, car number, its initial and the number of tons therein, but without any statement of same from the railroad company. Rees denied the receipt of the check for $114.45, mentioned in said letter, though Price said he admitted to him that he had received it. This was the last of the correspondence between Llera and Rees, so far as the record discloses, but on March 6th, 1920, Price wrote the appellee company saying:

"Please find check for Strathmore Coal royalty, also Cottage Steel Mine. Will mail statement by next mail. Have been delayed in getting statement at Cottage Steel on account of some coal that was sold through the tram at Bayard."

In this letter there were, as Rees testified, three checks, one of which "related to property on the West Virginia side," and that "we cashed." The others were returned, but before returning them, photographic copies were made by the appellee and these were offered in evidence, one for $21.30 and the other $105.15.

On September 27th, 1920, Rees received a statement, sworn to by Price, to which were attached two checks signed by Price as treasurer of the Strathmore Coal Mining Company, one for $380, dated September 11th, 1920, and the other for $132.50, which does not appear to be dated at all. These checks were offered in evidence by the appellee. This

statement, headed "Strathmore Mine No. 1," purported to give the number of tons supposedly taken from that mine in each of the months, from December to August, both inclusive, with a computation of the amount of royalty due thereon.

Rees in his testimony stated that no statements were ever received by the appellee, and no payments were ever tendered to it other than the statements and payments above mentioned.

The appellant is not only charged with default in the non-payment of the royalties at the times stipulated in the lease for the payment of the same, which, by the terms of the lease, gave to the plaintiff the right to enter and take possession of the leased property, but it is further charged with the breach of the covenant contained in the lease to exhibit to the lessor a copy of the statement from the agent of the railroad company, showing the number of pounds of coal shipped upon its road by the said lessees during the preceding month and taken from the leased premises.

The appellee was obliged to rely largely upon the appellant in ascertaining the amount of coal mined by it, and as the amount of rental for the leased mines depended upon the amount of coal taken therefrom, this provision of the lease was of great importance to the appellee, and it was fully warranted in demanding that the appellant should comply with it, and this the appellee did so early as February the 25th, 1918, in its letter of that date.

Nowhere in the correspondence is it claimed by the appellant that the statements sent were a compliance with the covenant to exhibit statements from the railroad company; and it is not claimed, except by Price, that any statements other than those appearing in the record were ever exhibited to the appellee, and he contents himself by simply stating that others were sent. It may have been that the appellant was prevented from obtaining such statments because of the act of Price, as testified to by some of the witnesses of the appellee, in mixing the coal taken from the leased

mine with that taken from another mine before or at the time it was loaded upon the cars of the railroad company; but if this be true, the appellant was not released thereby from the covenant, one, as we have said, so important to the appellee.

The evidence we have stated tending to show the default of the appellant entitling the appellee to re-enter and take possession of the leased premises was, in our opinion, legally sufficient to go to the jury. Consequently, we find no errors in the court's rulings on the defendant's 1st, 2nd, 3rd, 4th, 6th, and 7th prayers, asking that a verdict be directed for the defendant.

The plaintiff's fifth prayer, which is upon the question of damages, states, "as a matter of law, that if it (the court) shall find the plaintiff had a right to re-enter the lands described in the declaration because of a default, but that the Strathmore Coal Mining Company thereafter remained in possession, negligently disregarding the fact that the lease had terminated, if the court shall so find, then the measure of damages is the value of all coal mined and carried away by such defendant after the expiration of thirty days from the defendant's receipt of the notice to quit, up to and until the day of trial, estimated either by finding the price at which it would sell when brought up to the surface, and deducting the mere cost of bringing it there from the place where it was dug, or by finding its worth before it was removed from the place where it was dug, after it had been severed from the freehold."

The statute of this State, article 75, section 71, provides that the plaintiff in an ejectment case "shall recover as damages the mesne profits and damages sustained by him and caused by the ejectment and detention of the premises"; and in *Gibbs* v. *Didier,* 125 Md. 486, this Court held that the plaintiff could not claim rent or other profits in an action of ejectment and then, upon failure to recover them, thereafter recover such damages in another suit.

It would therefore seem that if the plaintiff in an eject-
ment suit is confined to damages recovered therein, and
cannot thereafter in another action sue for and recover
those damages which he had suffered, but had failed to
recover in such ejectment suit, then his right to recover for
damages suffered by him caused by the ejectment from and
detention of the premises should be coextensive with his
right to recover in trespass cases.  For example, if the
plaintiff in this case was entitled to the property by reason
of the default of the defendant, and the same is wrong-
fully withheld from it, why should not the liability of the
defendant be as great as in an action of trespass, and the
rights of the plaintiff to recover therefor be equal to those
of a plaintiff in an action of trespass?  If this be not so, a
lessee can make default, pay only the royalty, and sell the
coal, and not be required to account to the owner therefor,
although his lands are wrongfully withheld from him.
There can be, we think, no doubt as to the plaintiff's right
to recover damages therefor in cases of ejectment as much
as in trespass cases.  Article 75, section 92, provides that,
"In the absence of fraud, negligence or willful trespass,
the measure of damages for the wrongful working and ab-
stracting of another's minerals is the value of the minerals
in their native state, before severance, to the person from
whose property they were taken at the time of the taking;
but if one furtively or in bad faith works and abstracts min-
erals from the land of another, the party so offending may
be charged with the whole value of the minerals taken, and
allowed no deduction in respect of his labor and expenses in
getting them."

In *Mt. Savage, etc., Co.* v. *Monahan,* 132 Md. 664, this
Court, speaking through CHIEF JUDGE BOYD, said, in con-
struing said statute: "The measure of damages fixed by the
first paragraph does not apply, if the party taking the coal
was *negligent,* because it is only *in the absence of fraud,
negligence or willful trespass* that the rule applies.  If 'neg-

ligence,' as used in the first paragraph, is not embraced in one of the terms 'furtively or in bad faith,' as used in the second paragraph (and it would scarcely be contended that it is), then there is no part of the statute applicable to a case where there was negligence, and if it is included, then the appellant cannot complain of the measure of damages allowed, as it even got the benefit of the deduction for the cost of removing the coal to the mouth of the mines. But it is clear that the statute does not change the rule when the minerals are taken as the result of the negligence of the defendant."

Therefore, as the statute does not apply to this case, the measurement of damages applicable thereto is that which existed prior to the passage of the act, which is clearly stated in *Barton Coal Company* v. *Cox,* 39 Md. 1; *Franklin Coal Company* v. *McMillan,* 49 Md. 549, and *Blaen Avon Coal Co.* v. *McCulloh,* 59 Md. 403, to be that the plaintiff is entitled in cases of this character "to recover such sum per ton as the jury may find the said coal so mined was worth when first severed from its native bed, and before it was put upon mine cars, without deducting the expense of severing said coal from its native bed." And this is the measurement of damages stated in the plaintiff's fifth prayer.

The defendant, however, filed special exceptions to this prayer, in one of which it is alleged that there was "no evidence as to the price at which the coal would sell when brought to the surface at the time it was dug, and the cost of bringing it to the surface from the place where it was dug, and because there is no evidence as to the market value of the coal before it was removed from the place where it was dug, after it had been severed from the freehold."

The only evidence found in the record bearing upon this special exception is that of William A. Price and Robert Stallings. Price, when asked the market price of coal at

Cumberland, the nearest market to the mine, of the quality of that mined at Strathmore, in the month of January, said he would have to refer to his notes; that he could not answer the question without them; that the price of coal had varied so that he could not carry it in his mind. He was asked the same question as to other months, and his answer was practically the same. A part of the time the price of coal was fixed by the government at $2.75 on the cars at the mines, but at times he could not get so much as that, and when asked the cost of conveying the coal after it was dug from the pit to the car, he answered: "That would be different every day. Q. What would it be? A. $1.00 up to $2.00." He, however, kept no account of the cost in getting the coal from the mine to the tipple and then to the cars. It was an estimate only of what it would cost, and it was hard to make an estimate in developing an old mine.

Mr. Stallings testified that the price of coal during the period involved in this suit varied greatly, and at times the government price of $2.75 was effective and at others it was not, and at times it got so low as $1.75 per ton.

He was asked if he knew or could approximate the cost of mining and putting the coal on the cars at Strathmore Mines; he replied that he did not know.

The burden was upon the plaintiff to prove the value of the coal at the place of its severance after it was severed from the freehold. This could be done by evidence of its value upon the surface of the mine, less the cost of removal thereto from the place at which it was severed.

The evidence offered, we think, is entirely too vague and indefinite to prove the essential facts imposed upon the plaintiff under the rule. There was no evidence given at all, either by Price or Stallings, as to the value of the coal when severed; and their evidence as to the value of the coal upon the surface was too vague and indefinite to estab-lish a value at such place, from which the cost of its

removal from the place of its severance is to be deducted in ascertaining its value at the point of severance, if it should be held that there was evidence legally sufficient to go to the jury tending to show the cost of such removal.  Therefore the special exception should have been granted.

The other special exception to the prayer, that there was no evidence that the appellant company remained "in possession negligently, after the alleged termination of the lease," was properly overruled.

The withholding of the leased property from the lessor, under the facts and circumstances of the case, was evidence tending to show that the appellant remained in possession negligently after the alleged termination of the lease.

"The court's statement of the law of the case," in our opinion, correctly presents the law applicable thereto, and the special exceptions were properly overruled.  The defendant's ninth, tenth, and eleventh prayers being in conflict with the court's instructions, they were properly rejected.  The court's action upon the first exception relating to evidence was, we think, proper, as we fail to see in what way the inquiry, made as to the lot therein named which was not included in the lease, bears upon the issues of the case; and the same is true of the two succeeding exceptions.

Because of the court's error in overruling the special exception above mentioned to the plaintiff's fifth prayer, the judgment of the court below will be reversed.

*Judgment reversed and a new trial awarded, with costs to the appellant.*

A modification of the judgment of this Court having been asked by the appellee, and the Court, after due consideration of the petition and of the answer of the appellant thereto, having concluded that the reversible error found by it affected a part only of the matter in controversy, within the meaning of Code (vol. 3), art 5, sec. 22A, passed the following order:

The motion of the appellee filed July 25th, 1921, and the answer of the appellant to the order of this Court filed October 28th, 1921, being read and considered;

It is ordered this 2nd day of December, 1921, by the Court of Appeals of Maryland that the judgment of this Court as announced the 29th day of June, 1921, be and is hereby modified, so that the part of the judgment of the lower court for the plaintiff for the coal and mining rights appurtenant thereto as claimed in the declaration be and is hereby affirmed, and the part of the judgment for $10,000 damages against the Strathmore Coal Mining Company be and is hereby reversed and the cause remanded for a new trial as to the said damages only.